**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**E. F. BAERTSCHI and Alma M. Baertschi, Respondents.**

**No. 18994.**

United States Court of Appeals
Sixth Circuit.

June 12, 1969.

Chester C. Davenport, Jr., Department of Justice, Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Department of Justice, Washington, D. C., on brief, for petitioner.

Justice G. Johnson, Jr., Toledo, Ohio, Marshall, Melhorn, Bloch & Belt, James F. Kennedy, Jr., Toledo, Ohio, on brief, for respondents.

Before EDWARDS and CELEBREZZE, Circuit Judges, and GORDON,* District Judge.

EDWARDS, Circuit Judge.

The Commissioner of Internal Revenue appeals from a split decision of the Tax Court where the majority held in favor of the taxpayers.

The question presented in this case concerns when a "sale" of a home is final for purposes of the nonrecognition of capital gain authorized by the Int. Rev. Code of 1954, § 1034.

In pertinent part the statute provides:

"§ 1034. *Sale or exchange of residence*

"(a) *Nonrecognition of gain.*—If property (in this section called 'old residence') used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called 'new residence') is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b) ) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

\* \* \* \* \* \*

"(c) *Rules for application of section.*—For purposes of this section:

\* \* \* \* \* \*

"(5) In the case of a new residence the construction of which was commenced by the taxpayer before the expiration of one year after the date of the sale of the old residence, the period specified in subsection (a), and the 1 year referred to in paragraph (4) of this subsection, shall be treated as including a period of 18 months beginning with the date of the sale of the old residence."

The statute was designed to give relief from the tax on capital gain to a home owner who sold an "old" residence and purchased a "new" one on the same inflated housing market. The statute itself limits nonrecognition of the gain to an exchange (by sale of the old and repurchase and use of the new) within one year of the date of sale of the old residence. If construction of a new residence is commenced within the year limitation referred to above, occupancy of the new home within 18 months of the sale will satisfy the statute.

The facts were stipulated before the Tax Court and it is only the legal con-

---

\* Honorable James F. Gordon, United States District Court Judge for the Western District of Kentucky, sitting by designation.

clusions which flow from them which concern us:

"1. Petitioners are husband and wife, living at 5369 Farmington Road, Toledo, Ohio, which was their legal residence at the time their petition was filed in the Tax Court.

"2. Petitioners' Federal income tax returns for the taxable years here involved, namely the calendar years 1962 and 1963, were filed with the District Director of Internal Revenue at Cleveland, Ohio. Copies of said income tax returns are attached hereto, made a part hereof, and marked Joint Exhibits 1A and 2B, respectively.

"3. The deficiencies, as determined by the respondent, $4,736.68 for 1962 and $13,046.88 for 1963, were paid by the petitioners after the sending of the statutory notice together with interest of $2,393.62.

"4. On October 15, 1962, petitioners entered into an agreement, which was captioned as a 'Land Contract' with Irving Stollman (hereinafter referred to as Stollman) and Herman Ross (hereinafter referred to as Ross) by which they agreed to sell their residence property located at 3310 Secor Road, Toledo, Ohio to Stollman and Ross for a price of $192,000 upon the terms and conditions set forth in the agreement which is attached hereto, made a part hereof and marked Joint Exhibit 3C. The cost of such residence property to petitioners was $25,000.

"5. The purchasers, Ross and Stollman, did not consider the above-mentioned 'Land Contract' to be an option and they intended so far as they were able, to carry out the terms of the agreement.

"6. Upon the signing of the agreement, the petitioners were paid $11,000. An additional $46,000, payment of which was anticipated on November 30, 1962, was not paid on such date.

"7. Stollman and Ross encountered serious difficulties in raising the funds with which to complete the transaction. In order to raise the $46,000 needed for the November 30, 1962 payment, they were forced to borrow the money from private money lenders at a high rate of interest, securing the loan with substantially all of their assets, including a mortgage on the land which was the subject of the land contract between them and the petitioners, a copy of which is attached hereto, made a part hereof and marked Joint Exhibit 4D. On December 12, 1962, petitioners' attorney gave written notice of default to Stollman and Ross. On December 14, 1962, Stollman and Ross paid petitioners the overdue payment of $46,000 plus interest thereon from the proceeds of the loan referred to above.

"8. Between December 14, 1962 and the due date of the final payment on the land contract, May 31, 1963, Stollman and Ross encountered considerable difficulties in raising the necessary funds. They were acquiring petitioners' property together with some adjacent property for the purpose of constructing a small shopping center. The estimated total cost of the land and construction was in excess of $1,430,000 and the highest loan commitment they could get was $1,030,000.

"As the deadline for the final payment approached, Stollman and Ross were fearful that they would be declared in default. Finally, in May 1963, they found a party desiring to invest equity funds in the venture. After much negotiation, which was on the verge of breaking down from time to time, Stollman and Ross entered into an agreement with Harry Dosberg dated May 24, 1963, a copy of which is attached hereto, made a part hereof and marked Joint Exhibit 5E. Under the terms of such agreement Stollman and Ross sold a one-half undivided interest in the two parcels needed for the shopping center, one of such parcels being the subject of the land contract with the petitioners.

The remainder of the financing required by Stollman and Ross was thereby secured.

"9. On May 31, 1963, petitioners received the final payment of $135,000 plus interest and at that time executed and delivered the required deed to Stollman and Ross.

"10. Petitioners moved out of their old residence in December 1962, after which they lived temporarily in a house on Bancroft Street, Toledo, Ohio while looking for a satisfactory permanent residence. Attached hereto, made a part hereof and marked Joint Exhibit 6F is a summary of entries made by the husband petitioner in his diary covering the period July 10, 1962 through December 30, 1963 relating to petitioners' search for a new residence.

"11. On November 20, 1963 petitioners purchased a lot on Farmington Road, Toledo, Ohio and on December 9, 1963 commenced construction of their new home. They moved into their new residence on September 16, 1964. The total cost of the new residence was $103,860.72."

On these facts the Tax Court majority held that the taxpayers never had "an unqualified right to recover the consideration" for their old residence until May 31, 1963, when they were paid in full. The factor which the majority regarded as decisive was absence of the right, in the event of the purchasers' default, to proceed against them personally. The fourth clause of the purchase agreement provided in part:

"* * * The remedy or recourse of said parties of the first part for the non-performance of any obligation of the parties of the second part hereunder shall be limited solely to the moneys paid hereunder, and to the herein described property, and said parties of the second part shall not be liable for any deficiency arising from the sale of said property in any way, capacity or manner whatsoever, nor shall said parties of the first part

have the right to, nor seek, a deficiency or other money judgment against said parties of the second part."

The Tax Court majority derived the test of finality of the sale from a 1936 opinion of the Second Circuit:

"A closed transaction for tax purposes results from a contract of sale which is absolute and unconditional on the part of the seller to deliver to the buyer a deed upon payment of the consideration and by which the purchaser secures immediate possession and exercises all the rights of ownership. The delivery of a deed may be postponed and payment of part of the purchase price may be deferred by installment payments; but for taxing purposes it is enough if the vendor obtains under the contract the unqualified right to recover the consideration. Commissioner v. North Jersey Title Ins. Co., 79 F.(2d) 492 (C.C.A. 3); Helvering v. Nibley-Mimnaugh Lumber Co., 63 App.D.C. 181, 70 F.(2d) 843; Commissioner v. Moir, 45 F.(2d) 356 (C.C.A. 7)." Commissioner v. Union Pacific R.R., 86 F.2d 637, 639 (2d Cir. 1936).

The Commissioner argues that the facts in this case compel the conclusion that the sale was final at least by December 15, 1962, on which date the purchasers had paid $57,000 of the purchase price and assumed certain burdens and benefits of ownership.

The Commissioner argues that the Tax Court majority was wrong as a matter of law in relying upon a single item as the determining factor concerning the date of sale. Appellant asserts that the "no recourse" paragraph of the contract should be looked on as only one of the conditions of the total transaction, and that such factors as the amount of the down payment, the sellers' right to the complete purchase price, and the purchasers' right to title, the purchasers' right to possession and to complete dominion over the property, the purchasers' assumption of obligation for

taxes and insurance must also be considered.

We believe that this circuit had adopted a very practical rule in relation to consummation of a sale for tax purposes:

> "There are no hard and fast rules of thumb that can be used in determining, for taxation purposes, when a sale was consummated, and no single factor is controlling; the transaction must be viewed as a whole and in light of realism and practicality. Passage of title is perhaps the most conclusive circumstance. Brown Lumber Co. v. Commissioner, 59 App.D.C. 110, 35 F.2d 880. Transfer of possession is also significant. Helvering v. Nibley-Mimnaugh Lumber Co., 63 App. D.C. 181, 70 F.2d 843; Commissioner v. Union Pac. R. Co., 2 Cir., 86 F.2d 637; Brunton v. Commissioner, 9 Cir. 42 F.2d 81. A factor often considered is whether there has been such substantial performance of conditions precedent as imposes upon the purchaser an unconditional duty to pay. Commissioner v. North Jersey Title Ins. Co., 3 Cir., 79 F.2d 492; Brunton v. Commissioner, supra; Case v. Commissioner, 9 Cir. 103 F.2d 283; United States v. Utah-Idaho Sugar Co., 10 Cir. 96 F.2d 756. See Options and Sale Contracts in Taxation, 46 Yale Law Jour. 272, 279." Commissioner v. Segall, 114 F.2d 706, 709–710 (6th Cir. 1940), cert. denied, 313 U.S. 562, 61 S.Ct. 838, 85 L.Ed. 1522 (1941).

See also Morco Corp. v. Commissioner, 300 F.2d 245 (2d Cir.1962); Rich Lumber Co. v. United States, 237 F.2d 424 (1st Cir.1956).

■ In our instant case, as of December 15, 1962 the sellers of this property had been paid 29% of the purchase price. The purchasers had absolute right to title on payment of the full purchase price. The sellers had no right to cancel except upon the purchasers' default on the payments, in which instance the purchasers lost both the $57,000 down payment and the property. The sellers, as of that moment, obviously regarded their security for the total purchase price as sufficient for them to yield to the purchasers full control of the property, including the right to remove all present improvements and replace them with the improvements contemplated by the purchasers. And as we have noted, the purchasers took over full responsibility for taxes and insurance. Contrary to the view taken by the majority of the Tax Court, we do not feel that the single fact of a "no recourse" clause served to delay the finality of this sale until final payment of the total purchase price had been made.

We hold that for purposes of section 1034, the sale was consummated on December 15, 1962. It is, of course, undisputed that the taxpayers did not occupy the premises within 18 months thereafter, as provided by the statute.

As to the authorities relied upon by appellee, we decline to apply the language quoted from Commissioner v. Union Pacific R.R., 86 F.2d 637 (2d Cir. 1936), as controlling in our instant case. We believe the statement in Commissioner v. Segall, 114 F.2d 706 (6th Cir. 1940), cert. denied, 313 U.S. 562, 61 S. Ct. 838 (1941), represents a much more practical and appropriate definition of the circumstances which define finality of a sale. And we also note that the Second Circuit, which gave birth to Union Pacific, has followed Segall in a 1962 decision. Morco Corp. v. Commissioner, 300 F.2d 245 (2d Cir.1962).

We also believe that Commissioner v. Stuart, 300 F.2d 872 (3d Cir.1962), is readily distinguishable on its facts from the case we deal with here. There only 10% of the purchase price of the land had been paid down on the comparable disputed date, and further, neither possession nor control of the property had been yielded by the sellers to the purchaser.

■ We recognize, of course, that the sellers in this case acted in good faith. We also recognize that in all probability the financial difficulties of the purchas-

ers contributed to the delay in seeking a new residence. But income tax provisions which exempt taxpayers under given circumstances from paying taxes (or as here, postponing them) are strictly construed. Commissioner v. Jacobson, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477 (1948); Holt v. Commissioner, 364 F.2d 38 (8th Cir.1966), cert. denied, 386 U.S. 931, 87 S.Ct. 952, 17 L.Ed.2d 805 (1967); Kentucky Utilities Co. v. Glenn, 394 F.2d 631 (6th Cir.1968). Also, as noted by Judge Drennan's dissent, with which four of his Tax Court colleagues joined, we can think of no way by which the Tax Court majority's view can be upheld without opening the door to complete evasion of the time limitations on the part of any sellers of residential property who are willing to accept a substantial down payment and the right on default to recover the property as security for the sale.

Reversed and remanded to the Tax Court for entry of judgment dismissing appellees' petition.