**Floyd R. CLODFELTER and Enna L. Clodfelter, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 22924.

United States Court of Appeals, Ninth Circuit.

May 6, 1970.

**1392**

Floyd R. Clodfelter (argued), Roger E. Lageschulte, of Clodfelter, Lindell & Carr, Seattle, Wash., for appellants.

Benjamin M. Parker (argued), Dept. of Justice, Johnnie M. Walters, Asst. Atty. Gen., K. Martin Worthey, Washington, D. C., for appellee.

Before DUNIWAY, CARTER and TRASK, Circuit Judges.

TRASK, Circuit Judge.

Floyd R. Clodfelter and his wife, Enna, petition for review of an order and decision of the Tax Court of the United States which determined they were liable for a deficiency of $219,590.50 in payment of federal income taxes for the year 1957. The liability is said to result from a series of transactions involving the Waldorf Hotel located in Seattle, Washington. The decision of the Tax Court is reported at 48 T.C. 694. Our jurisdiction is properly invoked under Section 7482 of the Internal Revenue Code of 1954, 26 U.S.C. § 7482.

The legal issues for decision are as follows:

1. Where taxpayers acquired the hotel property on January 1, 1957, and then sold it by document dated June 6, 1957, reciting that it was "made and entered into * * * as of the first day of January, 1957", was there upon these facts such a transfer as to constitute a "sale or other disposition of property" within the meaning of Section 1001 of the Internal Revenue Code of 1954, 26 U.S.C. § 1001, as to which the taxpayers should report gain or loss for income tax purposes?

2. If so, what was the amount of the gain, if any; was it long-term or short-term gain; and were the taxpayers entitled to report the gain in accordance with the installment method of reporting as provided by Section 453 of the 1954 Code, 26 U.S.C. § 453?

The Commissioner found that there was a sale as of January 1, 1957, that it resulted in a short term gain and that the taxpayers were not entitled to use the installment method in reporting that gain. The Tax Court reviewed the transactions and arrived at the same conclusions. We hold that the determinations made by the Tax Court are not clearly erroneous and therefore affirm. See Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

Many of the facts are the result of stipulation. They disclose that the taxpayers on July 1, 1951 acquired the lessees' interest in a 99-year leasehold covering the land, buildings and improvements of the Waldorf Hotel. At the same time they purchased the furniture, furnishings and equipment. This transaction was evidenced by a contract of conditional sale of leasehold estate and personal property for a total of $436,250. The sum of $40,000 was paid down and the balance was to be paid in deferred installments. The taxpayers took possession and operated the hotel.

On July 1, 1955, by contract of conditional sale, the taxpayers sold their entire leasehold estate to Milton and Emilia Bave. They retained the furniture, fixtures, equipment and going business of the Waldorf Hotel and simultaneously leased the property back from the Baves for a term of 15 years and continued to operate it. This again was evidenced by contract of conditional sale

of leasehold estate providing for $60,000 down and the remainder payable in deferred installments. Taxpayers in their 1955 income tax return reported this transaction as a completed sale. They thereafter paid rentals to the Baves under the 15-year sublease and deducted them in computing their income tax.

On January 1, 1957, taxpayers repurchased the leasehold estate which they had sold to the Baves. The consideration was a cancellation of the then unpaid deferred balance of $232,750 due from the Baves to taxpayers and a payment to the Baves of $60,000 in cash consideration.

By contract of conditional sale dated June 6, 1957, but reciting that it was "made and entered into * * * as of the first day of January, 1957", taxpayers sold the leasehold together with scheduled furniture, furnishings, chinaware, silverware and equipment to the Doric Company for the total price of $700,000. This was pursuant to negotiations which took place in 1956. The Tax Court upheld the Commissioner's finding that this sale took place on January 1, 1957.

Simultaneously with the sale to Doric, Doric negotiated and entered into a similar agreement with William and Donald Sanders to sell to them for $350,000 a one-half interest in the property Doric had acquired. This agreement was dated June 28, 1957 and likewise recited that it was "made and entered into * * * as of the first day of January, 1957". As of the same date Doric and the two Sanders entered into a joint operating agreement dated July 10, 1957, for the operation of the Waldorf. This agreement recited:

"Whereas, by contract effective January 1, 1957, The Doric Company entered into an agreement to acquire the Waldorf Hotel property in Seattle, Washington, from F. R. Clodfelter, and on the same day resold an undivided one-half interest therein to the Sanders, * * *."

Upon these facts and others herein discussed we first consider whether there was a sale on January 1, 1957. The Tax Court has found that there was. Since the capital asset had been acquired on the same date, it had been held for less than six months and any gain must be considered short-term capital gain in computing taxable income. 26 U.S.C. § 1222.

Taxpayers disagree with this finding of the Tax Court. They argue that because the "Contract of Conditional Sale of Leasehold Estate and Personal Property" was for a consideration in part consisting of deferred payments, the transaction was an "open transaction" and the contract had no ascertainable fair market value when executed and delivered. Because of this, they contend that it was not a "sale or other disposition" within the meaning of Section 1001 of the Internal Revenue Code of 1954. Reliance is placed upon Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931), and Stephen H. Dorsey, 49 T.C. 606 (1968).

In a given case, the test to be applied to determine whether a transaction is a close one is a practical test. The transaction should be regarded in its entirety. In Commissioner of Internal Revenue v. Baertschi, 412 F.2d 494 (6th Cir. 1969), the court quoted with approval from Commissioner of Internal Revenue v. Segall, 114 F.2d 706, 709–710 (6th Cir. 1940), cert. denied, 313 U.S. 562, 61 S.Ct. 838, 85 L.Ed. 1522 (1941), as follows:

" 'There are no hard and fast rules of thumb that can be used in determining, for taxation purposes, when a sale was consummated, and no single factor is controlling; the transaction must be viewed as a whole and in light of realism and practicality. Passage of title is perhaps the most conclusive circumstance. Brown Lumber Co. v. Commissioner of Internal Revenue, 59 App.D.C. 110, 35 F.2d 880. Transfer of possession is also significant. Helvering v. Nibley-Mimnaugh Lumber Co., 63 App.D.C. 181, 70 F.2d 843;

Ccmmissioner of Internal Revenue v. Union Pac. R. Co., 2 Cir., 86 F.2d 637; Brunton v. Commissioner of Internal Revenue, 9 Cir., 42 F.2d 81. A factor often considered is whether there has been such substantial performance of conditions precedent as imposes upon the purchaser an unconditional duty to pay. Commissioner of Internal Revenue v. North Jersey Title Ins. Co., 3 Cir., 79 F.2d 492; Brunton v. Commissioner of Internal Revenue, supra; Case v. Commissioner of Internal Revenue, 9 Cir., 103 F.2d 283; United States v. Utah-Idaho Sugar Co., 10 Cir., 96 F.2d 756. See Options and Sale Contracts in Taxation, 46 Yale Law Jour. 272, 279.' " 412 F.2d at 498.

In *Baertschi,* the court also held that the presence of a nonrecourse clause was not sufficient to delay the finality of the sale until the last payment had been made.

The transaction in Burnet v. Logan, *supra,* involved a contract to pay for shares of stock in a mining corporation. The purchaser's obligation in part was to pay a sum of money for each ton of ore mined. However, there was no obligation to mine a minimum or maximum amount of ore, and no obligation for a fixed over-all price. The court held that the agreement had no ascertainable fair market value and that the transaction was not a closed one and thus there was no profit in the year the contract was signed. *Dorsey, supra,* involved a sale of shares with a part of the consideration payable as a per cent of receipts from sale or lease of pinsetting machines used in bowling alleys. The Tax Court reviewed at great length the uncertainties involved. In addition, there was no overall maximum price. It was concluded that the transaction should be treated as an "open transaction." Neither *Burnet* nor *Dorsey* appear as controlling here.

The transaction in the present case is quite different. There was an overall established price of $700,000 for the sale of the property consisting of the following:

| | |
|---|---|
| $60,000 | cash down payment as provided by contract; |
| $150,000 | additional cash received by taxpayers from proceeds of mortgage placed on the property by taxpayers. Cash received on or about February 6, 1957; |
| $356,105.68 | mortgage created at time of original purchase of property by taxpayers; |
| $133,894.32 | in deferred installments to be paid on the tenth day of every month beginning February 10, 1957, the amount of which was to be equal to the net operating profit derived from the operation of the hotel during the preceding month. |

The deferred installments were to be computed in accordance with the seller's existing accounting system and were to exclude any deductions for depreciation, management and capital improvements. In the absence of monthly profit there was to be no "personal obligation" on the purchaser. The other provisions in the document disclose a business-like arrangement clearly contemplating an intent by an owner to sell and a buyer to purchase and acquire title.

Simultaneously Doric Company, the purchaser, sold a one-half interest to the Sanders by contract containing almost identical terms to the Clodfelter-Doric contract except that, while the total price for the one-half interest was $350,000, the Sanders paid Doric a $60,000 down payment. Doric and the Sanders began operating under their agreements and made all payments on the basic mortgage after January 1, 1957, and all payments under the $150,000 mortgage after February 1, 1957. There was clear intent to effect a sale, evidenced by an agreement and supported

by substantial consideration paid by purchasers and received by sellers. The finding of the Tax Court of a sale is well supported.

In *Baertschi, supra,* where a land contract contained a "no recourse" provision similar to that here, this factor did not suffice to delay the finality of the sale until payment of the total purchase price had been made. The court was more interested in the facts that (a) the buyers had an absolute right to title on full payment; (b) the sellers had no right to cancel except upon default which would forfeit substantial sums of money paid by buyers and (c) the buyers had complete dominion over the property and assumed full responsibility for taxes and insurance. The same situation exists here. In addition, the new hotel operators deducted depreciation in accordance with their representations that they had acquired the properties on January 1, 1957.

 The finding of the Tax Court as to the value of the deferred installments payable under the terms of the contract is also supported by substantial evidence. Whether property has ascertainable market value on a particular date and the amount of that value is a question of fact. Slater v. Commissioner of Internal Revenue, 356 F.2d 668, 670 (10th Cir. 1966); Estate of Marsack v. Commissioner of Internal Revenue, 288 F.2d 533, 536 (7th Cir. 1961); Boudreau v. Commissioner of Internal Revenue, 134 F.2d 360, 361 (5th Cir. 1943). Here the taxpayers' witnesses and, indeed, the taxpayers did not assert that the contract was without value. Taxpayers were of the opinion that it had no "readily ascertainable" fair market value. Section 1001(b) of the Code does not require that the value of a contract must be "readily" ascertainable. Estate of Marsack, *supra,* 288 F.2d at 535. The sale of one-half interest in the property and the contract by taxpayers for one-half of the amount they received is substantial evidence to support the court's finding on value. In addition, the unpaid principal bore interest, a right of foreclosure existed as security and the payments were a charge against the entire net cash flow without deduction for depreciation, or for management fees or for capital improvements.

 Taxpayers next assert that because the contract was dated June 6, 1957, the gain must be recognized as a long-term capital gain. The Commissioner and the Tax Court found that it was in fact a sale on January 1, 1957, pursuant to negotiations and agreement made during the latter part of the calendar year 1956. We cannot say this finding is clearly erroneous. Indeed, an examination of the various documents points strongly to a January 1, 1957 completed sale date. The purchasers took possession as of that date; they began depreciating the property as of January 1, 1957; the cost of consumable stores and unopened bottled goods was determined by inventory as of that date.

We have likewise examined the Tax Court's computation of the amount of the gain and the right to the use of the installment method of reporting gain and cannot declare its findings are clearly erroneous. Commissioner of Internal Revenue v. Duberstein, *supra,* 363 U.S. at 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

The decision is affirmed.