Margaret V. DETTMERS, Executrix, Estate of Herrick L. Johnston, Deceased, and Margaret V. Dettmers, Individually, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 19856.

United States Court of Appeals, Sixth Circuit.

July 29, 1970.

**1020**

James H. Larva, Columbus, Ohio, (Thomas M. Tyack, Columbus, Ohio on the brief), for appellant.

Stephen Schwarz, Dept. of Justice, Washington, D. C., (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Elmer J. Kelsey, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before PECK, and McCREE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

This is an appeal from a decision of the Tax Court [1] upholding the Commissioner's deficiency determination with respect to taxpayer's income taxes on certain capital gains which arose out of the involuntary conversion of real property in 1957 [2].

---

[1]. The opinion of the Tax Court is reported at 51 T.C. 290 (1969).

[2]. All of the real estate transactions involved in this case were executed by one Herrick L. Johnston, who died on October 6, 1965. The appellant herein is the subsequently remarried widow of Herrick L. Johnston. She is a party by virtue of her capacity as executrix of the Estate of Herrick L. Johnston, deceased, and also by virtue of having field joint income tax returns with her husband for the year in issue. For purposes of simplicity, references will hereinafter be to "taxpayer."

Taxpayer purchased a parcel of real estate in Columbus, Ohio, in August 1955. In May 1957, the property was conveyed to the State of Ohio by negotiated sale under threat of condemnation, and a net gain of approximately $182,-000 was realized by taxpayer. Taxpayer subsequently entered into negotiations for the purchase of certain property, referred to herein as the Nordhoff Street property, located near Los Angeles, California. On October 24, 1958, taxpayer and the owner of the Nordhoff Street property executed an escrow agreement establishing the purchase price of the property, the terms of payment, rate of interest and other terms and conditions of sale such as the proration of taxes and insurance to the date of closing. On the same date taxpayer made a partial down payment of $10,000 and executed a purchase money note together with a Deed of Trust to the property. They were deposited with the escrow agent, to whom the seller also delivered a Deed of Grant. On January 23, 1959, the escrow agreement became fully executed, with title to and possession of the property passing to taxpayer on that date.

Section 1033(a) (3) of the Internal Revenue Code of 1954 (hereinafter "the Code") provides that any gain realized as the result of the involuntary conversion of real property is not to be recognized if, within one year after the close of the taxable year in which the gain is realized, it is used to purchase property similar or related in use to the property so converted for the purpose of replacing the property converted.[3]

There is no dispute here that the Nordhoff Street property would otherwise qualify as replacement property if taxpayer made a timely purchase of that property. The only issue here is whether taxpayer "purchased" the Nordhoff Street property by the end of 1958 (i. e., within one year following the close of the taxable year in which the Columbus, Ohio, property was converted). The resolution of this issue in turn depends on the meaning of the word "purchases" as used in § 1033(a) (3).

While recognizing that the word "purchases" is not defined in the applicable statute, regulations or decided cases, the Tax Court held that, for purposes of § 1033(a) (3), a purchase takes place when ownership of the property is acquired, and that acquisition of ownership takes place upon the passage of the benefits and burdens of ownership of

3. "(a) GENERAL RULE—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

\* \* \* \* \*

"(3) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED AFTER 1950.—Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

(A) NONRECOGNITION OF GAIN.—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property,

at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. Such election shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe.

\* \* \* \* \*

(B) PERIOD WITHIN WHICH PROPERTY MUST BE REPLACED. —The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending—

(i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized." Int.Rev.Code of 1954 § 1033.

the property. The Tax Court then concluded that under the facts of this case the purchase was not effected by the end of 1958 because the benefits and burdens of ownership of the Nordhoff Street property did not pass to taxpayer until the closing of the escrow on January 23, 1959.

A provision giving taxpayers an opportunity to avoid taxation on the gain realized upon the involuntary conversion of property was first enacted in 1921. Section 214(a) (12) of the Revenue Act of 1921, ch. 136, 42 Stat. 227, allowed as a deduction from net income the amount received by reason of the involuntary conversion of property if the proceeds of such conversion were "[expended] in the acquisition of other property" of a similar character. In the Revenue Act of 1924 the relief was changed from that of a deduction from net income to the nonrecognition of gain realized on the conversion. The requirement remained, however, that the proceeds be "expended in the acquisition of other property" of a similar character. Revenue Act of 1924 § 203(b) (5), ch. 234, 43 Stat. 253.

The provision for nonrecognition of gain realized on the involuntary conversion of property if the proceeds were "expended in the acquisition of other property" remained unchanged then until 1950. Section 112(f) of the Internal Revenue Code of 1939 was then amended to eliminate the requirement (imposed by the regulations promulgated pursuant to that section[4]) that the proceeds from the property involuntarily converted be directly traceable to the replacement property. In the amended code section (§ 112(f) (3), applicable only to conversions occurring after December 31, 1950), Congress used for the first time language which was carried over to § 1033(a) (3), by providing for nonrecognition of the gain if the taxpayer timely "purchases * * * [replacement] property."

■ The legislative history of the amendment clearly shows that its purpose was to correct two problems then existing with respect to the application of § 112(f), both of which were caused by the tracing of proceeds requirement, and that it was not intended to change the substantive nature of the relief afforded under the statute. Under the tracing requirement a taxpayer who acquired replacement property before receiving the proceeds from the involuntary conversion was required to recognize any gain realized on the conversion because the proceeds could not be directly traced to the replacement property. Similarly, a taxpayer who used the proceeds of the involuntary conversion to pay off any indebtedness on that property was required to recognize the gain to the extent it was applied to the indebtedness on the property converted rather than to the acquisition of the replacement property.

That Congress was concerned with the elimination of these problems rather than the change in the substantive relief is apparent from the language of the legislative report:

"The enactment of the bill will not only provide appropriate relief for taxpayers who promptly *acquire* replacement property before receipt of the proceeds from the converted property, but will also facilitate acquisition of the land needed in connection with defense projects." Senate Report No. 1052, 82d Cong., 1st Sess. (2 U.S.C.Cong. & Adm.News (1951), p. 2598.) (Emphasis supplied.)

Although there is no clear explanation in the legislative reports of why the language was changed from "acquisition" to "purchases", the most likely reason suggested by those reports and the purpose of the amendment is that, with the elimination of the tracing of proceeds requirement, Congress wanted to specify that the acquisition be by purchase rather than, for example, by gift or devise. *See* Senate Report No. 1052, 82d Cong., 1st Sess. (2 U.S.C.Cong. & Adm.News (1951), p. 2601). Taxpayer contends

---

4. Treas.Reg. 103, § 19.112(f)–1 (1939).

that by using the word "acquisition" with respect to conversions prior to January 1, 1951, and the word "purchases" with respect to conversions after December 31, 1950, Congress intended to apply a new, more liberal standard to the application of proceeds of conversions occurring after 1950. We believe, however, that Congress merely used the word "purchases" as a more specific form of the word "acquires" and that it intended the word "purchases" to mean no less than acquisition of ownership for purposes of § 112(f) (3) of the 1939 Code (now § 1033(a) (3) of the 1954 Code).

 This conclusion leads next to the question of what constitutes a sufficient acquisition for purposes of § 1033(a) (3). There do not appear to be any cases directly on this point. However, cases involving the somewhat analogous problem involved in the computation of the holding period to determine whether the gain on the sale of property qualifies for capital gains treatment [5] are relevant to the question since they similarly involve both the acquisition and disposition of ownership of property. The rule of those cases which we believe applicable here is that ownership of real property is acquired either upon the delivery of the deed or upon the transfer of the benefits and burdens of ownership of the property, whichever occurs first. *See* Commissioner v. Merrill, 40 T.C. 66, 74 (1963), aff'd per curiam, 336 F.2d 771 (9th Cir. 1964); North Carolina Lumber Co. v. Commissioner, 19 T.C. 587, 599 (1952), rev'd on other grounds, 211 F.2d 543 (4th Cir. 1954); Union Pacific Ry. Co., v. Commissioner, 32 B. T.A. 383, 391, 393 (1935), aff'd 86 F.2d 637, 639 (2d Cir. 1936); see also Rev. Ruling 54–607, 1954–2 Cum.Bull. 177.

There remains only the question of whether either title to or the benefits

5. Int.Rev.Code of 1954 §§ 1222, 1223.

6. Under the terms of the contract and by statutory provision, the risk of loss of destruction or condemnation of the property did not pass to taxpayer until trans-

and burdens of ownership of the Nordhoff Street property were transferred to taxpayer by the end of 1958. As the Tax Court found, it was not until January 23, 1959 (the date upon which title to the property was transferred to taxpayer), that taxpayer obtained possession of the property or assumed any obligation for the payment of taxes or insurance on the property. Interest on taxpayer's purchase money note did not begin to run until that date, and taxpayer was not even required to pay the balance of the $20,000 down payment until January 22, 1959, the day before the closing.[6] We therefore conclude that the Tax Court properly held that taxpayer did not make a timely purchase of replacement property and was not entitled to the relief provided by § 1033.

The judgment of the Tax Court is affirmed.

fer of title or possession of the property. Cal.Civil Code § 1662.