Hart B. **MORRISON** and Margaret M. Morrison, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

No. C74–504.

United States District Court, N. D. Ohio, E. D.

Sept. 7, 1977.

John Kennedy Lynch, Cleveland, Ohio, for plaintiffs.

James C. Lynch, Asst. U. S. Atty., Cleveland, Ohio, Lawrence J. Ross, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION ORDER

### MANOS, District Judge.

This is an action for the recovery of income taxes alleged to have been erroneously assessed by the United States. Jurisdiction is based on 28 U.S.C. § 1346(a) (1970) and 26 U.S.C. § 7422 (1970).

The plaintiff[1] filed a federal income tax return for the year 1970 in which he reported the proceeds from the sale of certain properties as long-term capital gains. Upon audit and examination of the plaintiff's 1970 tax return, the Internal Revenue Service (IRS) determined that the proceeds from the sale of these properties should have been reported as ordinary income instead of long-term capital gains. Accordingly, the IRS assessed a deficiency in tax against the plaintiff in the amount of $93,-109.92 and a deficiency in interest of $13,-446.43. The plaintiff paid these amounts in full on September 11, 1973, and on September 19, 1973, he filed a refund claim with the IRS. The refund claim was disallowed in full by the IRS and shortly thereafter the plaintiff filed this complaint. The matter is now before the court on the defendant's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56.

It is the plaintiff's contention that he was entitled to treat the proceeds received from the sale of four parcels of real estate in 1970 as long-term capital gains, thereby permitting him to deduct 50 percent of those gains from his gross income pursuant to I.R.C. § 1202. The four parcels at issue are known as the Johnson property, the B'Tawn property, the Nightwine property, and the Behner property. The defendant has moved for summary judgment on that portion of the refund claim that corresponds to the excess tax allegedly assessed on the proceeds from the sale of the Johnson property and B'Tawn property. Since the Nightwine property and the Behner property are not presently at issue, only the transactions related to the plaintiff's purchase and sale of the B'Tawn and the Johnson properties will be discussed here.

The material facts of the transactions involving the Johnson and the B'Tawn properties are not in dispute. The following statement of facts is based upon the plaintiff's responses to the defendant's request for admissions.

### THE JOHNSON PROPERTY

On February 16, 1970 the plaintiff, together with Theodore H. Case, entered into a land contract with George H. and Catherine Johnson to purchase certain real estate in Geneva, Ohio from the Johnsons for the price of $150,000. The plaintiff and Case put $2,000 down on February 16, 1970 and agreed to pay the rest in two installments: $18,000 on July 15, 1970 and $130,000 on or before January 1, 1971. The contract provided that the plaintiff and Case could not

---

1. Hart B. Morrison and his wife, Margaret, filed a joint return and both are parties to this suit. For convenience, both will be referred to as "plaintiff."

receive title until the full purchase price was paid; that they could not take possession until 30 days after title was transferred to them; that in lieu of interest on the unpaid purchase price the Johnsons were to receive the rents from the property until title passed; and that the taxes, assessments, and insurance on the property were to be prorated between the Johnsons and the plaintiff and Case as of the date on which title was transferred. On July 16, 1970, the plaintiff and Case made the first installment payment of $18,000; and on November 27 they granted an option to the Department of Natural Resources of the State of Ohio to purchase the Johnson property. On December 7, 1970, the Johnsons deeded the property to the plaintiff and Case and four days later, on December 11, 1970 the plaintiff and Case sold the same property to the State of Ohio for $334,000. They then paid the Johnsons the $110,000 outstanding on the original purchase price.

## THE B'TAWN PROPERTY

On January 10, 1970 the plaintiff entered into a land contract with a partnership known as the B'Tawn Beach Club and agreed to purchase certain real estate in Geneva, Ohio for $425,000. He put $10,000 down (in the form of a promissory note) and agreed to pay the balance in two installments: $290,000 on or before December 1, 1970, and $125,000 on or before December 31, 1970. The terms of the land contract were exactly the same as the contract the plaintiff entered into with the Johnsons: title was to remain in the B'Tawn Beach Club until payment of the entire purchase price; in lieu of interest on the unpaid purchase price the B'Tawn Beach Club was entitled to the rents from the property until title was transferred to the plaintiff; the taxes, assessments, and insurance on the property were to be prorated between the B'Tawn Beach Club and the plaintiff as of the date of transfer of title; and the plaintiff was not entitled to physical possession until 30 days after transfer of title.

The plaintiff did not make the first installment payment which was due on December 1, 1970. However, on December 2, 1970, the B'Tawn Beach Club conveyed title to its property in trust to Howard M. Nazor, instructing him to hold the property for the plaintiff as trustee. Nazor was also instructed to convey title to the B'Tawn property to the plaintiff upon the payment of the balance due on the purchase price to the B'Tawn Beach Club. The trust instrument further instructed Nazor to reconvey the property to the B'Tawn Beach Club if payment was not received from the plaintiff by January 1, 1971, On December 16, 1970, Nazor, acting for the plaintiff, in his capacity as trustee, granted an option to the Department of Natural Resources of the State of Ohio to purchase the B'Tawn property for $565,000. Subsequently, Nazor, as trustee for the plaintiff, conveyed to the State of Ohio title to the B'Tawn property and was paid $565,000. Shortly thereafter, the B'Tawn Beach Club was paid the $415,000 outstanding on the original purchase price of the property.

## I.

In order for a taxpayer to obtain long-term capital gains treatment for the proceeds from the sale of property, the transaction must come within the provisions of I.R.C. §§ 1221 and 1222, or § 1231. I.R.C. § 1222(3) defines long-term capital gain as the gain received from the "sale or exchange of a *capital asset* held for more than six months." [2] I.R.C. § 1221 specifically excludes certain property from the definition of capital asset. Among the exclusions in § 1221 is property used in a taxpayer's trade or business. The sale of property used in a taxpayer's trade or business will generate long-term capital gains only if that property satisfies I.R.C. § 1231. In general, § 1231 disallows capital gains treatment for property that would either be

2. I.R.C. § 1222(3) has been changed since the plaintiff filed his 1970 tax return. The Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1785 (1976) has changed the holding period of capital assets to one year instead of six months. For the 1977 tax year the holding period is nine months and for all years thereafter it will be one year.

included in the inventory of the taxpayer or is held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

The plaintiff contends that the gain he realized on the sale of the Johnson and B'Tawn properties was properly reported in his 1970 tax return as a long-term capital gain. He maintains the properties were capital assets that he did not use in his trade or business, and that he held them for over six months. Alternatively, he also maintains that the assets he sold to the State of Ohio were contract rights and not realty.

The defendant asserts that the plaintiff in fact sold realty, and did not hold the properties for the required six months. Also, the defendant maintains the properties were not capital assets because the plaintiff held them primarily for sale to customers in the ordinary course of his business. The defendant chose however not to discuss this second allegation in its brief because it believed it to be unnecessary for the disposition of this motion.

### Jurisdiction

■ The defendant asserts the plaintiff should not even be allowed to argue that the assets he sold to the State of Ohio were his rights under the land contracts and not realty. The defendant bases its assertion upon I.R.C. § 7422(a) and Treas. Reg. § 301.6402–2(b)(1) (1967).

Section 7422(a) provides in pertinent part:

"No suit . . . shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously . . . collected . . . until a claim for refund or credit has been duly filed with the Secretary . . . according to the . . . regulations . . . ."

Treas. Reg. § 301.6402–2(b)(1) sets out the detail required in the claim filed with the Internal Revenue Service:

"The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. . . . A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit."

The federal courts should not make tax determinations before the agency most qualified to handle these matters considers the issue. This affords the Internal Revenue Service an opportunity to consider and dispose of the claim without the expense and time which would be consumed if every claim had to be litigated in federal court. *Herrington v. United States,* 416 F.2d 1029, 1032 (10th Cir. 1969). Further, if the matter is ultimately litigated, no factual surprises will arise at the time of trial. *Mayer v. United States,* 285 F.2d 683, 685 (9th Cir. 1960). The taxpayer's claim, therefore, must be sufficient to advise the Commissioner of Internal Revenue of the items on which he depends for support of his position.

As a ground for a refund the plaintiff stated in his claim:

"This deficiency is based on an error in increasing the taxpayers' business income in the amount of $135,567.08 on the theory that taxpayers' sale of real property . . . was improperly reported as the gain from the sale of a capital asset held for more than six months, and the Internal Revenue Service erroneously considered it as ordinary income."

The defendant contends the plaintiff is attempting to recover on a ground not set forth in his claim for refund, and that I.R.C. § 7422(a) and the regulations thereunder prevent this court from considering the plaintiff's arguments. According to the defendant, the plaintiff should not be allowed to argue in this action that he sold land contract rights because that ground does not appear in his refund claim. The court, however, believes the plaintiff has met the required standard of specificity in his refund claim.

■ The plaintiff's claim presented "facts sufficient to enable the Commissioner of Internal Revenue to make an intelli-

gent administrative review of the claim." *Lemoge v. United States,* 378 F.Supp. 228, 232 (N.D.Cal.1974) (quoting *Scovill Manufacturing Co. v. Fitzpatrick,* 215 F.2d 567, 569 (2nd Cir. 1954)). The Internal Revenue Service knew that the plaintiff was challenging the tax assessed on the proceeds he received from the transactions involving the Johnson and B"Tawn properties. The Service also knew the plaintiff was challenging the tax imposed on the grounds that it was properly reportable as a capital gain. This claim, therefore, is sufficiently detailed to meet the requirements of Treas. Reg. § 301–6402–2(b)(1).

In a similar case, *Helis v. Usry,* 496 F.2d 1319 (5th Cir. 1974), the taxpayer simply stated in his refund claim that the Commissioner improperly disallowed *all expenses* of a certain partnership. The Internal Revenue Service argued that the district court had erred in allowing the taxpayers to deduct the expenses under I.R.C. §§ 163 and 164, since neither of these specific grounds were raised in the taxpayer's refund claim. The Fifth Circuit held that the ground set out in the taxpayer's refund claim was sufficient to "put the Commissioner on notice." 496 F.2d at 1321. The *Helis* court held the taxpayer's general statement in his claim was sufficient to advise the Internal Revenue Service of the items on which the taxpayer claimed error and the grounds upon which he made his claim. *Id.* The Fifth Circuit therefore held that the taxpayer's refund claim satisfied the procedural requirements of I.R.C. § 7422(a). *Id. Accord, Laurel Hill Cemetery Association v. United States,* 427 F.Supp. 679, 685–686 (E.D.Mo. 1977); *Santa Cruz Building Association v. United States,* 411 F.Supp. 871, 876–877 (E.D.Mo.1976); *Lemoge v. United States,* 378 F.Supp. 228, 232–233 (N.D.Cal.1974).

The authorities cited by the defendant to support its contention that the plaintiff is barred by I.R.C. § 7422(a) are unpersuasive. In all the cases relied upon by the defendant the grounds for refund set out by the taxpayers in their refund claims were substantially different from the grounds attempted to be put forth in their refund suits. *See, e. g., United States v. Felt &*

*Tarrant Manufacturing Co.,* 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed.2d 1025 (1931) (refund claim stated taxpayer was entitled to relief from excess profits tax provision; refund suit sought to assert a right to a deduction from gross income on account of exhaustion or obsolescence of patents); *Bear Valley Mutual Water Co. v. Riddell,* 493 F.2d 948 (9th Cir. 1974) (refund claim challenged IRS' disallowance of business deductions and its characterization of certain assessments as income; refund suit sought to assert a right to loss carryover); *Bel v. United States,* 452 F.2d 683 (5th Cir. 1971), *cert. denied,* 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118 (1972) (refund claim challenged IRS' determination that a marital deduction be limited to the decedent's net disposable estate; refund suit sought to assert the IRS had incorrectly determined the decedent's net disposable estate).

The court holds, therefore, that the plaintiff's refund claim set forth grounds and facts sufficient enough to enable the IRS to make an intelligent administrative review of the claim the plaintiff now brings before this court. *See, Lemoge v. United States,* 378 F.Supp. 228, 232–233 (N.D.Cal.1974); *see also, Walker v. United States,* 143 F.Supp. 566 (N.D.Tex.1956, *aff'd* 240 F.2d 601, (5 Cir.) *cert. denied* 354 U.S. 939, 77 S.Ct. 1402, 1 L.Ed.2d 1538 (1957) (refund claim that asserted the collection of a penalty "was unconstitutional" held to be a detailed enough ground to apprise the IRS of the basis of the claim). Therefore, the procedural requirements of I.R.C. § 7422(a) and Treas. Reg. § 301.6402–2(b)(1) have been satisfied and this court holds it has jurisdiction to consider whether the plaintiff sold contract rights or realty.

## II.

### THE JOHNSON PROPERTY

The portion of the plaintiff's refund suit that concerns the Johnson property is alternatively based upon two grounds. First, he claims his right to purchase the Johnson property under the land contract was, standing alone, a capital asset which he

held for more than six months before he sold it to the State of Ohio. Alternatively, he maintains he acquired ownership of the Johnson property on the day he entered into the land contract, by operation of the doctrine of equitable conversion. Accordingly, he claims he held the property from the date of the contract, which was more than six months before the property's sale.

■ The plaintiff's first contention is without merit. The only evidentiary material before the court on this motion for partial summary judgment is the plaintiff's answers to the defendant's request for admissions. These admissions largely consist of the documents involved in the B'Tawn and Johnson transactions. The documents establish that the Johnsons conveyed title to the plaintiff and Case on December 7, 1970 and four days later the plaintiff and Case conveyed title to the state. In addition, the documents establish that the total purchase price was paid to the plaintiff and Case by the State of Ohio. None of the documents before the court indicate that the plaintiff and Case sold to the state anything other than realty. These uncontroverted facts compel the conclusion that the asset the plaintiff and Case sold to the State of Ohio was realty. The facts, therefore, are not susceptible to the plaintiff's interpretation that he sold contract rights.

In order for the proceeds from the sale to qualify as long-term capital gains, the plaintiff must demonstrate that he held the Johnson property for more than six months. This brings us to the plaintiff's second contention, that by operation of equitable conversion he held the Johnson property from the day he entered into the land contract.

For purposes of determining the holding period of a capital asset, "hold" has long been equated with "own."

"In common understanding, to hold property is to own it. In order to own or hold one must acquire. *The date of acquisition* is then, that from which to compute the duration of ownership or length of holding."

*McFelly v. Commissioner of Internal Revenue,* 296 U.S. 102, 107, 56 S.Ct. 54, 56, 80 L.Ed. 83 (1935) (interpretation of § 101 of the Revenue Act of 1928, the forerunner of I.R.C. §§ 1221–1222) (emphasis supplied). Although the courts have had little occasion to determine, for capital gains purposes, precisely when a party "acquires" property purchased under land contract, the Sixth Circuit has decided analogous questions.

In *Commissioner of Internal Revenue v. Baertschi,* 412 F.2d 494 (6th Cir. 1969) the Sixth Circuit determined the date on which property purchased under a land contract was acquired for purposes of I.R.C. § 1034.[3] The taxpayer in *Baertschi* was held to have "acquired" the property in question on the day he assumed certain benefits and burdens of ownership, even though he had not yet paid the full purchase price or obtained title. The Sixth Circuit held that the taxpayer's right under the contract to full control and possession of the property, coupled with his assumption of the responsibility for taxes and insurance, vested him with sufficient burdens and benefits of ownership. The court, therefore, held he had acquired the property on the day he assumed the obligation to pay the taxes and insurance on the property and had the right to possession. 412 F.2d at 498. The court never mentioned equitable conversion.

The rationale employed in *Baertschi* was more succinctly stated by the Sixth Circuit in *Dettmers v. Commissioner of Internal Revenue,* 430 F.2d 1019 (6th Cir. 1970). In

---

**3.** I.R.C. § 1034 provides for nonrecognition of the capital gain to a home owner who sells an "old" residence and purchases a "new" one on the same inflated housing market. When *Baertschi* was decided this section limited nonrecognition of the gain to an exchange (by sale of the old and purchase and use of the new) within one year of the date of sale of the old residence. Also, if construction of a new residence was commenced within the one year

limitation referred to above, occupancy of the new home within 18 months of the sale would have satisfied the section. The Tax Reform Act of 1976, Pub. L.No.94–455, 90 Stat. 1785 (1976) changed the one year limitation to 18 months and allowed for nonrecognition when a new residence is constructed, if construction begins within the 18 month period and the new home is occupied within two years of the sale of the old residence.

*Dettmers* the Sixth Circuit was required, for purposes of I.R.C. § 1033(a)(3),[4] to determine when a taxpayer had "acquired" property purchased through an escrow arrangement. Drawing upon earlier Tax Court cases that involved the computation of the holding period of property for capital gains, the Sixth Circuit fashioned a rule for the determination of the date of acquisition of real property: "[O]wnership of real property is acquired either upon the delivery of the deed *or* upon the transfer of the benefits and burdens of ownership of the property, *whichever occurs first."* 430 F.2d at 1023 (emphasis supplied); *see also, Merrill v. Commissioner of Internal Revenue,* 40 T.C. 66, 74 (1963), *aff'd per curiam,* 336 F.2d 771 (9th Cir. 1964). In *Dettmers* the court held the taxpayer did not acquire the property when she entered into the escrow agreement, but that she acquired the property on the day the escrow agreement became fully executed, since it was not until then that she either had title or obtained any of the burdens or benefits of ownership. The pertinent burdens and benefits the court found absent were possession of the property and the assumption of the obligation to pay taxes and insurance on it.

Since the date of acquisition for purposes of the nonrecognition sections (I.R.C. §§ 1033 and 1034) is also the date from which the computation of the holding period of a capital asset is made, the rule set out in *Dettmers v. Commissioner of Internal Revenue* for determining the date of acquisition will control in the instant case. The plaintiff, therefore, must establish that he either obtained title to the Johnson property or obtained the burdens and benefits of ownership of that property for more than six months before he sold it to the State of Ohio. If neither is established, the six month holding requirement is not satisfied and the plaintiff will not receive capital gains treatment for the proceeds from the

sale of the Johnson property. The doctrine of equitable conversion is not applicable. Whether a taxpayer has "acquired" property for tax purposes compels an examination of all the circumstances to determine if he possesses the benefits and burdens of ownership. This examination is made as a practical matter, without regard for the vagaries of state title law doctrines like equitable conversion. *See, Boykin v. Commissioner of Internal Revenue,* 344 F.2d 889, 894 (5th Cir. 1965); *Merrill v. Commissioner of Internal Revenue,* 40 T.C. 66, 77 (1963), *aff'd per curiam,* 336 F.2d 771 (9th Cir. 1964).

The facts demonstrate that the plaintiff and Case did not obtain title to the Johnson property until four days before the sale to the State of Ohio; and it is the holding of this court that the seller did not transfer the burdens and benefits of ownership until then either. The plaintiff and Case were not entitled to possession of the property, the main benefit of ownership, until after transfer of title; and under the terms of the contract, the taxes, assessments, and insurance on the property were to be prorated between the buyer and the seller as of the day of transfer of title. Until the transfer of title, the obligation was upon the Johnsons to pay the taxes and assessments. *See, Dettmers v. Commissioner of Internal Revenue,* 430 F.2d 1019, 1023 (6th Cir. 1970) (same construction given to a similar contractual provision). Consequently, the plaintiff and his partner, Case, did not receive any of the burdens and benefits of ownership recognized by the Sixth Circuit in *Dettmers* and *Baertschi* until after December 7, 1970 when they received title.

The plaintiff maintains the provision of the land contract which allowed the Johnsons to keep the rents from their property in lieu of interest on the unpaid purchase price created a benefit of ownership possessed by him and his partner. The court disagrees. A benefit of ownership

---

4. When *Dettmers* was decided I.R.C. § 1033(a)(3) provided that any gain realized as the result of the involuntary conversion of real property is not to be recognized if, within one year after the close of the taxable year in which the gain is realized, it is used to replace the property so converted through purchase of property similar or related in use to the converted property. The Tax Reform Act of 1976, Pub. L. No. 94–455, 90 Stat. 1785 (1976) changed the time limit for replacement from one to two years.

necessarily involves control over the premises, and the plaintiff and Case did not have the right to decrease or increase the level of rents paid. In addition, even if this were considered to be a benefit of ownership, the marginal benefit of having rents applied in lieu of interest is not sufficient, standing alone, to hold that the Johnson property was "acquired" by the plaintiff and Case before title was transferred.

Since the court finds that the plaintiff and Case did not acquire title to the Johnson property until December 7, 1970, the proceeds of the sale on December 11, 1970 cannot be treated as long-term capital gains because the property was not held for more than six months.

## THE B'TAWN PROPERTY

In his brief in opposition to the defendant's motion for partial summary judgment, the plaintiff did not draw any distinction between the transactions involving the B'Tawn and Johnson properties. Due to the manner in which the plaintiff effected the sale of the B'Tawn property, however, different questions are presented.

In the Johnson transaction title was conveyed directly to the state by the plaintiff. By contrast, in the B'Tawn transaction, the seller (B'Tawn Beach Club) transferred title to a trustee for the benefit of the plaintiff, and the trustee then conveyed title to the state. Also, in the Johnson transaction the state paid the purchase price directly to the plaintiff; and in the B'Tawn transaction the state paid the purchase price to the trustee, who then paid the plaintiff.

Despite this difference, the plaintiff's arguments regarding the B'Tawn property are the same two he made regarding the Johnson property: he claims he did not sell realty to the State of Ohio, but that he sold a capital asset represented by the land con-

tract he had on the B'Tawn property; and alternatively, he maintains he acquired ownership of the B'Tawn property, by operation of equitable conversion, on the day he entered into the land contract.

For the reasons given above in the Johnson property discussion, we can dismiss the plaintiff's argument that he acquired the B'Tawn property by operation of equitable conversion on the day he entered into the land contract with the B'Tawn Beach Club. *See, Dettmers v. Commissioner of Internal Revenue,* 430 F.2d 1019 (6th Cir. 1970). But the plaintiff's claim that the capital asset he sold was a contract right, and not the B'Tawn property itself, cannot be similarly dismissed. Due to the unique method by which the sale of the B'Tawn property was effected, it cannot be determined, on the facts presently before the court, whether or not the plaintiff did in fact sell a contract right to the State of Ohio.

■ The B'Tawn property was being held in trust for the plaintiff, so the plaintiff held a beneficial interest in the property at the time of sale. Conceivably, it was this beneficial interest in the B'Tawn property that the plaintiff conveyed to the State of Ohio, through his trustee.[5] However, there is nothing to indicate that the contract between the plaintiff and the B'Tawn Beach Club had been rescinded. The plaintiff, therefore, was also conceivably in possession of certain contract rights at the time of the sale to the state. Whether the plaintiff conveyed to the state a beneficial interest in the B'Tawn property or his contractual right to purchase the property cannot be determined. Whatever arrangement or understanding the plaintiff had with the trustee has not been disclosed, so it is not now possible for the court to determine the exact nature of the asset (if any) the plain-

**5.** The proceeds from the sale of a beneficial interest do qualify for long-term capital gains treatment, but they must be held by the taxpayer for more than six months. *McAllister v. Commissioner of Internal Revenue,* 157 F.2d 235, 237 (2nd Cir. 1946), *cert. denied,* 330 U.S. 826, 67 S.Ct. 864, 91 L.Ed. 1276 (1947). The holding period for such a beneficial interest is computed from the day the property is acquired by the trust. *Helvering v. Gambrill,* 313 U.S. 11, 61 S.Ct. 795, 85 L.Ed. 1155 (1941). The plaintiff's beneficial interest in the B'Tawn property, therefore, was created on the day the property was placed into trust, December 4, 1970.

tiff conveyed to the state. Until that determination is made, the court cannot ascertain whether the plaintiff held a capital asset for more than six months.

### III.

A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. At this point, important aspects of the transactions involving the B'Tawn property remain unclear. Summary judgment on the portion of the plaintiff's refund suit that concerns the proceeds from the sale of the B'Tawn property, therefore, cannot be granted to the defendant.

▮ As indicated earlier, however, the uncontested facts of the Johnson transaction that are before this court permit only one interpretation: the plaintiff sold the Johnson property to the State of Ohio. The documentary evidence before this court cannot be interpreted to support the plaintiff's contention that he sold contract rights in the Johnson property. Although on a motion for summary judgment the evidence is viewed in a light most favorable to the non-moving party, when the evidence is not susceptible to the interpretation which the non-moving party seeks to give it, the motion for summary judgment should be granted. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 259, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see generally,* Wright & Miller, Federal Practice and Procedure: Civil, § 2727 at 532–537 (1973). Therefore, since the plaintiff neither sold contract rights to the Johnson property nor held the Johnson property for more than six months, the defendant is entitled to partial summary judgment on that portion of the plaintiff's refund suit that concerns the proceeds from the sale of the Johnson property.

IT IS SO ORDERED.