**NORTH CAROLINA LUMBER CO.**
v.
**COMMISSIONER OF INTERNAL REVENUE.**

No. 6687.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 11, 1954.

Decided March 15, 1954.

Soper, Circuit Judge, dissented.

Meade Whitaker, Birmingham, Ala. (Lucien D. Gardner, Jr., and Cabaniss & Johnston, Birmingham, Ala., on brief), for petitioners.

Robert B. Ross, Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Robert N. Anderson, Sp. Assts. to the Atty. Gen., on brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is a petition to review a decision of the Tax Court which denied to taxpayer the right to have section 108(b) of the Internal Revenue Code, 26 U.S. C.A., applied in computing for the fiscal year ending November 30, 1944, the declared value excess profits tax imposed by section 600 of the Internal Revenue Code. In the Tax Court, taxpayer raised a number of points which were decided adversely to its contentions and which are not insisted on here. See 19 T.C. 587. In this court the question presented relates to taxpayer's right to have the allocation formula prescribed by section 108(b) of the Code applied in computing its declared value excess profits tax for the fiscal year in question. The importance of this to taxpayer arises from the fact that section 510 of the Revenue Act of 1943, amending section 602, which defines net income for the purpose of the declared value excess profits tax, authorizes the exclusion of long term capital gain in computing net income for taxable years beginning after December 31, 1943.

Taxpayer is a lumber company filing its returns on a fiscal year basis. In its return for the fiscal year ending November 30, 1944, it reported a long term capital gain of approximately $383,000, which arose out of the sale of its physical assets in July 1944. In computing net income as a basis for the imposition of the declared value excess profits tax, it excluded $11/12$ of this amount, which was, of course, the same as computing the tax for the portion of the fiscal year prior to December 31, 1943, with the long

term capital gain included and for the portion of the year subsequent to that date with the long term capital gain excluded. The Commissioner disallowed this exclusion and held that the tax should be imposed on the income for the entire fiscal year without any allowance whatever for the change in the law which became effective for taxable years after December 31, 1943. The effect of this was to impose upon taxpayer additional declared value excess profits taxes amounting to approximately $45,000 on account of a sale of capital assets made more than six months after the end of the year 1943, and to do this merely because taxpayer was operating on a fiscal year rather than a calendar year basis in filing its tax returns.

No argument has been made, and we think none can be made, sustaining the justice or reasonableness of imposing the additional tax or of denying in the computation of declared value excess profits tax the manifestly just allocation formula admittedly used in computing ordinary income or excess profits taxes. The only justification suggested is that the statute prescribing the allocation formula mentions sections imposing other taxes but does not mention the section imposing the declared value excess profits tax. A sufficient answer to this, we think, is that section 603 of the Internal Revenue Code expressly makes applicable to the declared value excess profits tax "All provisions of law * * * applicable in respect of the taxes imposed by chapter 1" of the Internal Revenue Code and that the allocation formula of 108(b) was expressly made applicable to taxes imposed by that chapter. Section 603 of the Code is as follows:

"§ 603. Other laws applicable. All provisions of law (including penalties) applicable in respect of the taxes imposed by chapter 1, shall, insofar as not inconsistent with this subchapter, be applicable in respect of the tax imposed by section 600,

except that the provisions of section 131 [1] of that chapter shall not be applicable."

Section 108(b) of the Code, which is a part of chapter 1 and prescribes the allocation formula for taxes imposed by sections 11, 12, 13, 14 and 15 of that chapter, is as follows:

"(b) Taxable years beginning in 1943 and ending in 1944. In the case of a taxable year beginning in 1943 and ending in 1944, the tax imposed by sections 11, 12, 13, 14, 15, and 450 shall be—

"(1) Corporations. In the case of a corporation, an amount equal to the sum of—

"(A) that portion of a tentative tax, computed as if the law applicable to taxable years beginning on January 1, 1943, were applicable to such taxable year, which the number of days in such taxable year prior to January 1, 1944, bears to the total number of days in such taxable year, plus

"(B) that portion of a tentative tax, computed as if the law applicable to taxable years beginning on January 1, 1944, were applicable to such taxable year, which the number of days in such taxable year after December 31, 1943, bears to the total number of days in such taxable year."

The purpose of the section was, not to impose a tax or to grant a deduction, but to place the benefits and burdens of each succeeding revenue act equally and ratably on all taxpayers regardless of the accounting period employed, so that fiscal year taxpayers whose tax year included the effective date of Internal Revenue Code amendments would be affected in the same way as calendar year taxpayers. The allocation provision had its origin in the Revenue Act of 1942 and its purpose was thus stated in the report of the House Committee on Ways and

1. Section 131 here referred to relates to credits against tax allowed on account of taxes of foreign countries and possessions of the United States.

Means on the 1942 Revenue Act (Report No. 2333):

"Your committee is convinced that no such distinctions [between calendar year and fiscal year taxpayers] in tax treatment should be made simply because of the taxable year chosen by the taxpayer. It is felt that income received after the close of the previous calendar year should be taxed at the same rate to all taxpayers, regardless of the accounting period employed. The bill contains provisions to effectuate this policy." 1942 2 C.B. p. 400.

No reason has been suggested why Congress should have intended to deny to fiscal year taxpayers with respect to declared value excess profits tax the benefit of the allocation formula which is allowed with respect to ordinary income and excess profits taxes; and we can think of none. The declared value excess profits tax was enacted to protect against evasions of the capital stock tax. Any changes in the law, such as the one here involved allowing exclusion of long term capital gains, should be administered so as to bear as equally as possible upon all taxpayers whether reporting upon the fiscal year or calendar year basis; and, to accomplish this result, the allocation formula must be applied to declared value excess profits tax as well as to income and other excess profits taxes. We think that the result was accomplished when Congress made applicable to the declared value excess profits tax all provisions of law applicable to taxes imposed by chapter 1. The failure to mention the declared value excess profits tax in the statute enacting the allocation formula was probably a mere oversight; but, at all events, it was immaterial in view of the fact that all provisions of law applicable to chapter 1 taxes were expressly made applicable to that tax. At the most, the failure to mention that tax in the statute resulted in an ambiguity in view of the provisions of section 603; and when the reason and purpose of the statute are considered, there can be no question but that the ambigui-

ty should be resolved in favor of the application of the allocation formula to declared value excess profits tax as well as to the taxes that were specifically mentioned.

■■ It is argued that section 603 should be construed as applying to administrative and not substantive provisions of chapter 1 and that the allocation provision of section 108(b) is substantive; but we think that that provision is clearly administrative and not substantive. The reporting of taxes on a fiscal year rather than a calendar year basis is a matter of administration, not a matter of imposing taxes or providing for deductions therefrom; and the allocation formula is a matter of administering the tax law justly between taxpayers reporting on the two bases. Whether the section be classified as administrative or substantive, however, it was just the sort of provision which should have been applied, and which we think Congress intended to apply, in the computation of declared value excess profits taxes. There is nothing to the contrary in the decision in Arrow-Hart & Hageman Electric Co., 7 T.C. 1350, which dealt with deductions allowed from income, clearly a substantive matter, and not adjustments for those reporting on a fiscal year basis to equalize them with those reporting on a calendar year basis. In C. Ray Novak, 11 T.C. 341, the Tax Court applied the allocation formula of section 108(b) to a tax not specifically mentioned in the statute enacting that section. The reason given, i. e. that section 400 (the section prescribing the tax there in question) prescribed a tax which the taxpayer might elect in lieu of one of the taxes specifically mentioned in the statute adopting 108(b), does not seem nearly so strong a ground for adopting the allocation formula as the provision of section 603 to the effect that provisions of law applicable to those taxes shall "be applicable in respect of the tax imposed by section 600". Certainly the provision of section 602 that the net income for the purposes of the declared value excess profits tax shall be

the same as net income for income tax purposes, with certain deductions, is as good a reason for applying the allocation formula to that tax as the reason given for applying it to the section 400 tax involved in the Novak case.

For the reasons stated the judgment of the Tax Court will be reversed and the case will be remanded for further proceedings not inconsistent herewith.

Reversed.

SOPER, Circuit Judge (dissenting).

I dissent for the reasons set out in the opinion of the Tax Court, North Carolina Lumber Co. v. Commissioner of Internal Revenue, 19 T.C. 587.