T.C. Memo. 1995-535

UNITED STATES TAX COURT

HENRY ALLEN WATERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8798-93.          Filed November 13, 1995.

Henry Allen Waters, pro se.

<u>Lori M. Mersereau</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent, by notice of deficiency, determined that petitioner is liable for a deficiency in his 1989 Federal income tax and an addition to tax in the amounts of $38,405 and $7,681, respectively.  The issues for decision are: (1) Whether the gain realized by petitioner from the sale of his principal residence qualifies for nonrecognition treatment under

section 1034(a);[1] (2) whether petitioner is entitled to an interest deduction in excess of that allowed by respondent; and (3) whether petitioner is liable for the accuracy-related penalty under section 6662(a) for a substantial understatement of his tax liability.

## FINDINGS OF FACT[2]

Petitioner resided in Fairfield, California, at the time his petition was filed.

During 1989, petitioner decided to sell his principal residence in Richmond, California, with the intention of purchasing a new home in the area. In April 1989, prior to selling his Richmond home, petitioner engaged the services of a real estate agent to assist him in finding and purchasing a new home. Shortly thereafter, petitioner located a home he wanted to purchase and applied to a mortgage financing company for a loan. Petitioner's loan application was denied, however, because he had filed for bankruptcy in 1988 and his obligations in that regard had not yet been resolved. At the time petitioner applied for the loan, he was making payments of approximately $580 per month pursuant to a debt repayment plan established in accordance with his bankruptcy case.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The parties have stipulated facts and exhibits which are incorporated by this reference.

Petitioner continued his search for a new home and, in July 1989, attempted to purchase another house. Once again, petitioner's application for a loan was denied due to his recent bankruptcy filing and his outstanding obligations under the debt repayment plan.

Meanwhile, petitioner found a buyer for his Richmond home, and he agreed to sell the house for $125,000. The grant deed effectuating the transfer was signed by petitioner on July 24, 1989, and the transaction went to settlement on August 1, 1989, at which time the deed was filed with the recorder's office in Contra Costa County. Total proceeds to petitioner were reduced by (among other settlement charges) closing costs of $2,000 and prorated property taxes of $80.44. Settlement charges to the purchaser were $5,735.36, including a loan origination fee of $2,368.75. Petitioner, presumably believing that he would be eligible for nonrecognition treatment under section 1034(a), did not report as taxable income on his 1989 return any gain from the sale of his old residence.

During 1989, up to the date he sold the property, petitioner paid $7,532.08 in mortgage interest on his Richmond home. Nevertheless, on his 1989 Schedule A--Itemized Deductions, petitioner reported a home mortgage interest deduction of $11,582, which amount presumably includes the $7,532.08 noted above and a portion of the closing costs and other charges reported on the settlement statement relating to the transfer of the Richmond property.

After selling his Richmond home, petitioner continued his search for a new home and completed his obligations under the debt repayment plan with a lump-sum payment in April 1990, at which time petitioner's bankruptcy case was closed. Petitioner's next attempt to obtain a loan for the purchase of a new home occurred in May 1991, but he was again unsuccessful, presumably due to his recent bankruptcy.

During the ensuing 2 months, petitioner finally located and succeeded in obtaining financing for the purchase of a home in Fairfield, California. Petitioner testified that he made a deposit on his new home in July 1991, and that he received a key and moved into the house prior to August 1, 1991. The grant deed, however, was not signed by the sellers until August 2, 1991, and the settlement date for the transfer was August 7, 1991. Petitioner paid $137,500, excluding settlement charges, for the house.

OPINION

The first issue for decision is whether the gain realized by petitioner in 1989 from the sale of his old residence qualifies for nonrecognition treatment under section 1034(a). Section 1034 allows a taxpayer to defer the recognition of gain realized from the sale of his principal residence, provided he meets the requirements of the statute. It provides, in relevant part, that when property used by a taxpayer as his principal residence is sold by him and, within the period beginning 2 years before the date of such sale and ending 2 years after such date, property is

purchased by the taxpayer and used as his principal residence, gain shall be recognized only to the extent that the adjusted sale price of the old residence exceeds the cost of purchasing the new residence.

Respondent argues that, for purposes of determining the applicability of section 1034, the sale of petitioner's former residence in Richmond and the purchase of his new residence in Fairfield occurred on the respective settlement dates of the transfers, August 1, 1989, and August 7, 1991. Thus, respondent argues that petitioner's new home was not purchased within 2 years of the sale of his old residence and that he is therefore not eligible for nonrecognition treatment under section 1034(a). Petitioner contends that he made a deposit on the Fairfield property and moved into the home prior to August 1, 1991, and further, that he made several attempts to purchase a new home prior to that date but that he was unable to obtain financing due to his bankruptcy filing.

We note at the outset that the purchase of a new residence within the period fixed by statute is a strict requirement for obtaining the benefits of section 1034, and that we are without authority to weigh the merits of the events precipitating delay to determine whether the time limits may be waived or extended. Elam v. Commissioner, 477 F.2d 1333, 1335 (6th Cir. 1973), affg. per curiam 58 T.C. 238 (1972); Bayley v. Commissioner, 35 T.C. 288, 297 (1960). Petitioner's circumstances, including the bankruptcy, his inability to obtain financing, and his missing

the statutory deadline by a few days, are unfortunate and elicit sympathy.  Courts, however, have consistently held that the time limits of section 1034 are uniformly applicable and leave no room for interpretation or tempering because of hard or unfortunate circumstances, even where the taxpayer was prevented from acquiring the new residence on time due to circumstances beyond his control.  See Shaw v. Commissioner, 69 T.C. 1034, 1038 (1978), and cases cited therein.[3]  "Extensions of § 1034(a)'s time limitations are available only when a specific statutory provision so provides."  Moore v. Townsend, 577 F.2d 424, 428 n.7 (7th Cir. 1978).  Thus, petitioner's eligibility for nonrecognition treatment depends solely on a determination of the dates when the sale of his old residence and the purchase of his new residence occurred, and we cannot consider any delay in purchasing a new home caused by petitioner's personal bankruptcy.

The question of when a sale is complete for Federal tax purposes is essentially one of fact to be decided based on a consideration of all the facts and circumstances with no single factor controlling the outcome.  Derr v. Commissioner, 77 T.C. 708, 723-724 (1981); Baird v. Commissioner, 68 T.C. 115, 124 (1977).  A sale of real property is generally complete upon the earlier of the transfer of legal title or the practical assumption of the benefits and burdens of ownership by the

---

[3] See also Chavez v. Commissioner, T.C. Memo. 1983-199; Henry v. Commissioner, T.C. Memo. 1982-469; Bazzell v. Commissioner, T.C. Memo. 1967-101.

purchaser.  Dettmers v. Commissioner, 430 F.2d 1019, 1023 (6th Cir. 1970), affg. 51 T.C. 290 (1968); Derr v. Commissioner, supra at 724; Baird v. Commissioner, supra at 124.

In California, a grant deed evidencing the transfer of title takes effect upon delivery by the grantor, or, if placed in escrow, upon performance of the prescribed conditions and delivery by the depositary.  Cal. Civ. Code secs. 1054, 1057 (West 1982); Blumenthal v. Liebman, 240 P.2d 699, 703 (Cal. Dist. Ct. App. 1952).  In the present case, we agree with respondent that the relevant property transfers occurred on August 1, 1989, and August 7, 1991, the respective settlement dates of the transfers.  Although petitioner contends that he made a deposit on his new residence and moved into the home in July 1991, he has not otherwise shown that he assumed the burdens/risks of ownership prior to the passage of title on August 7, 1991.[4]  From these facts, we are compelled to conclude that petitioner failed to meet the statutory requirements of section 1034.

While we sympathize with petitioner's plight--he undoubtedly intended and diligently attempted to purchase a new residence within the 2-year period required for the nonrecognition of gain from the sale of his old residence--we are powerless to move a line Congress has drawn.  We hold that petitioner has failed to

---

[4] Petitioner has not shown, for example, that he was responsible for and/or paid property taxes on his new home, or that he maintained insurance on the property, for any period prior to the date of settlement.

show that he is qualified for nonrecognition under section 1034(a).

In the notice of deficiency, respondent determined that petitioner's gain on the sale of his old residence was equal to the full sales price of the property; no reduction was taken for petitioner's adjusted basis in the property, although such a reduction is provided for in section 1001. The Court brought this matter to the attention of the parties, and they filed a supplemental stipulation of facts agreeing that the $125,000 selling price included in petitioner's income should be reduced by $10,780 of costs and expenses in connection with the sale.[5] Accordingly, petitioner realized $114,220, rather than $125,000 as the net proceeds of sale. In addition, the parties stipulated that petitioner's adjusted basis in the property sold was $77,806.25. Accordingly, petitioner realized income of $36,413.75 from the sale of the Richmond realty. The parties should reflect these differences from the notice of deficiency in their Rule 155 computation.

Next, we consider the home mortgage interest deduction of $11,582 reported by petitioner on his 1989 return. Petitioner claims that this amount includes $7,532.08 in mortgage interest paid, and several amounts reported on the settlement statement petitioner received when he sold the Richmond property,

---

[5] Petitioner claimed $2,000 of closing costs as part of an interest deduction on his return. Respondent disallowed this amount as part of a disallowance of a large amount of interest claimed.

including:  Closing costs ($2,000), prorated property taxes ($80.44), and loan origination fees paid by the purchaser ($2,368.75).[6]  While petitioner erred in reporting these amounts collectively as mortgage interest on his 1989 Schedule A, he is nevertheless entitled to the following deductions: (1) Mortgage interest--$7,532.08, and (2) property taxes--$80.44.  The $2,000 closing costs were reflected above as a selling expense in calculating petitioner's gain from the sale of the Richmond property.  Petitioner is not entitled to deduct the loan origination fees because they were not paid by him.

Finally, respondent determined an addition to petitioner's tax for 1989 under section 6662(a) in the amount of $7,681.  Section 6662 imposes an accuracy-related penalty on a substantial understatement of income tax.  The section provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 20 percent of the amount of any underpayment attributable to such understatement.  The taxpayer bears the burden of proving that the Commissioner's determination as to the addition to tax under section 6662(a) is erroneous.  Rule 142(a).

An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  An understatement is the difference

---

[6] The amounts petitioner claims make up the mortgage interest deduction total $11,981.27, or $399.27 more than the deduction reported on petitioner's return.  Petitioner did not offer an explanation for this discrepancy.

between the amount required to be shown on the return and the amount actually shown on the return.  Sec. 6662(d)(2)(A).  The understatement is reduced, however, to the extent it is (1) based on substantial authority or (2) adequately disclosed in the return or a statement attached to the return.  Sec. 6662(d)(2)(B)(i) and (ii).  Neither exception is present here.  Therefore, if the recomputed deficiency under Rule 155 satisfies the statutory percentage or amount, petitioner will be liable for the addition to tax under section 6662(a).

To reflect the foregoing,

Decision will be entered

under Rule 155.