JOSEPH MELVILLE WOODS, JR., PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27484–09.          Filed October 27, 2011.

P entered into a contract for deed to purchase a house in 2008, took possession of the house in 2008, and claimed the first-time homebuyer tax credit pursuant to I.R.C. sec. 36 on his 2008 Federal income tax return. The house required renovations before being ready for occupancy. Petitioner intended to use the first-time homebuyer tax credit to pay for the necessary renovations. In February 2009 petitioner received $7,500 for the first-time homebuyer tax credit and began renovations. In August 2009 R issued P a statutory notice of deficiency denying P's claimed first-time homebuyer tax credit for 2008. Upon receiving notice that R was denying the credit, P suspended renovations of the house. R argues that P is not entitled to the first-time homebuyer tax credit for two reasons. First, R argues that P took possession of the house under a contract for deed and therefore has not "purchased" the house pursuant to I.R.C. sec. 36. Next, R argues that even if P satisfies the "purchase" requirement of I.R.C. sec. 36, the house was not P's "principal residence" in 2008 as that term

is used in I.R.C. sec. 36. P argues that he intended to occupy the house as his full-time home as soon as the renovations were complete. *Held*: Pursuant to Texas property law, the contract for deed granted P equitable title to the house, and P therefore has "purchased" the house under I.R.C. sec. 36. *Held*, *further*, I.R.C. sec. 36 requires a prospective analysis, asking whether a taxpayer *will* occupy a house as a principal residence. *Held*, *further*, P has established that he intends to occupy the house as his principal residence as soon as the necessary renovations are complete, and he is therefore entitled to the first-time homebuyer tax credit for 2008.

Joseph Melville Woods, Jr., pro se.
*Christopher M. Menczer*, for respondent.

HAINES, *Judge*: Respondent determined a deficiency in petitioner's 2008 Federal income tax of $7,500. The sole issue for decision is whether petitioner is entitled to the first-time homebuyer tax credit (FTHBC) for 2008 pursuant to section 36.[1]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. At the time petitioner filed his petition, he resided in Texas.

Petitioner works in Rice, Texas, and has been working there since 1999. Throughout most of that time, petitioner lived in Dallas, which is approximately 50 miles from Rice. Because of the distance and the commuting cost, petitioner began looking for a permanent place to live in Rice. In 2008 petitioner found a house for sale in Rice (the Rice house). Petitioner also learned through an advertisement that he might be eligible for the FTHBC. Petitioner confirmed the possibility of the FTHBC through his own research on the Internal Revenue Service (IRS) Web site and discussions with his tax preparer.

On December 18, 2008, petitioner entered into an agreement for deed to purchase (contract for deed) the Rice house from Capital T Properties (Capital T) for $75,000 and took possession of the house. Petitioner paid Capital T an initial downpayment of $2,000 and agreed to pay the balance of the

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended for the year at issue.

purchase price together with 7 percent interest over 184 months. Although petitioner took possession of the Rice house under the contract for deed, legal title does not transfer from Capital T to petitioner until petitioner has paid the final monthly installment. Petitioner is required to pay all property taxes attributable to the Rice house for all periods after December 18, 2008.

The Rice house required renovations before being ready for occupancy. Petitioner planned to use the FTHBC to fund the necessary renovations and could not afford the renovations without the credit. In January 2009 petitioner claimed the FTHBC on his 2008 Federal income tax return. In February 2009 petitioner received $7,500 for the FTHBC.[2] As a result, in March 2009 renovations on the Rice house began.

During the period of renovation, petitioner lived in a rental house in Dallas until a fire left it uninhabitable. He has since lived with his daughter in Dallas. On August 20, 2009, the IRS sent petitioner a notice of deficiency disallowing the FTHBC. As a result, petitioner suspended renovations of the Rice house. On November 18, 2009, the Court filed petitioner's timely petition challenging respondent's determination with respect to the FTHBC.

## OPINION

### I. *FTHBC*

Section 36(a) provides a refundable tax credit to a first-time homebuyer of a principal residence in the United States. In 2008 the amount of the credit was 10 percent of the purchase price of the residence, with a limitation of $7,500. Sec. 36(b)(1)(A). Section 36(c)(1) defines a first-time homebuyer as any individual (and if married, the individual's spouse) having no present ownership interest in a principal residence during the 3-year period ending on the date of the purchase of the principal residence. Section 36(c)(2) provides that the term "principal residence" has the same meaning as used in section 121.

Respondent contends that petitioner fails to qualify for the FTHBC for two reasons. First, respondent argues that peti-

---

[2] Although referred to as a "credit", for the tax year in question (i.e., 2008) the FTHBC is essentially a governmental, non-interest-bearing loan inasmuch as the recipient taxpayer repays the credit by an increase in the income tax rate over a 15-year period. Sec. 36(f)(1).

tioner took possession of the Rice house under contract for deed and has not acquired legal or equitable title of the property. Next, respondent argues that even if petitioner satisfies the "purchase" requirement of section 36, the Rice house was not petitioner's "principal residence" in 2008.

II. *Whether for Federal Tax Purposes Petitioner "Purchased" the Rice House*

We first address the issue of whether petitioner "purchased" the Rice house in 2008.[3] To decide when a transfer is complete for tax purposes, we examine all the surrounding facts and circumstances, no single one of which is controlling. *Baird v. Commissioner*, 68 T.C. 115, 124 (1977). The focus of our inquiry, however, is on when the benefits and burdens of ownership have shifted. *Id.* Generally, a transfer is complete upon the earlier of the transfer of title or the shift of the benefits and burdens of ownership. *Deyoe v. Commissioner*, 66 T.C. 904, 910 (1976) (citing *Dettmers v. Commissioner*, 430 F.2d 1019, 1023 (6th Cir. 1970), affg. *Estate of Johnston v. Commissioner*, 51 T.C. 290 (1968)).

In a Federal tax controversy, State law controls the determination of the taxpayer's interest in the property, and the tax consequences are then determined under Federal law. *United States v. Natl. Bank of Commerce*, 472 U.S. 713, 722 (1985) (and cases cited and quoted therein). Accordingly, to determine the property rights transferred to petitioner from Capital T pursuant to the contract for deed, we must look to Texas property law.

We reviewed a similar transaction under Texas property law in *Musgrave v. Commissioner*, T.C. Memo. 2000–285. In *Musgrave*, the taxpayers signed a contract for deed to sell a property to a church in a bargain sale and claimed a charitable contribution deduction for the difference between the fair market value and the sale price of the property. The taxpayers agreed to sell and the church agreed to purchase the property for $152,500, to be paid in monthly installments of $1,400. Under the contract for deed, the taxpayers retained legal title to the property, but the church had full rights of

---

[3] Sec. 36(c) provides that the term "purchase" means any acquisition, but only if: (1) The property is not acquired from a related person; or (2) the basis of the property in the hands of the acquiring person is not determined in whole or in part by the basis of the property in the hands of the seller, or under sec. 1014(a). Neither of these limitations is applicable in this case.

possession and was required to pay any applicable property taxes on the property and the taxpayers were required to convey legal title to the church when the final monthly installment was paid. The issue before us was whether equitable title (i.e., the benefits and burdens of ownership) passed from the taxpayers to the church in the year the parties entered into the contract for deed.

In finding for the taxpayers, we relied on the holding by the Supreme Court of Texas in *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 949 (Tex. 1990), which described the substance of a contract for deed as effecting a "change of ownership wherein [the] purchaser becomes [the] equitable owner of the property while all that remains in [the] seller is bare legal title, more in the nature of security to guarantee payment than anything else". As in *Musgrave v. Commissioner*, *supra*, we see no reason to treat the contract for deed between petitioner and Capital T differently. The contract for deed is a financing arrangement between Capital T, as the seller, and petitioner, as the buyer. Although legal title remains with Capital T, equitable title passed to petitioner in 2008 upon signing of the contract for deed. Petitioner paid Capital T an initial downpayment of $2,000 and took possession of the Rice house. Petitioner is required to pay all property taxes after December 18, 2008. Finally, nothing in the contract for deed removes petitioner's obligation to make his monthly payments to Capital T for any reason. Therefore, we find that petitioner acquired equitable title and therefore "purchased" the Rice house in 2008 for purposes of section 36.

III. *Whether the Rice House Was Petitioner's "Principal Residence" in 2008*

Next, respondent argues that the Rice house does not satisfy the "principal residence" requirement of section 36. Section 36(c)(2) provides that the term "principal residence" has the same meaning for purposes of section 36 as in section 121. Section 121 generally provides that gross income does not include gain from the sale or exchange of property if, during the 5-year period ending on the date of sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's "principal residence" for periods

aggregating 2 years or more. Consequently, section 121 requires a retrospective analysis, asking whether a taxpayer has occupied a primary residence for 2 of the previous 5 years.

Section 36 is fundamentally different from section 121. Section 36(a) provides that

In the case of an individual who is a first-time homebuyer of a principal residence in the United States *during a taxable year*, there shall be allowed as a credit against the tax imposed by this subtitle *for such taxable year* an amount equal to 10 percent of the purchase price of the residence. [Emphasis added.]

Pursuant to section 36, a taxpayer who purchases a home during a taxable year may be entitled to the FTHBC for that same year. There is no occupancy requirement to establish a "principal residence". In contrast to section 121, section 36 requires a prospective analysis. Therefore, for purposes of section 36, "principal residence" means the primary dwelling or house that a taxpayer *will* occupy as his principal residence.

The appropriateness of this prospective analysis is further supported by section 36(f), which requires a taxpayer to recapture the FTHBC if the principal residence for which the taxpayer claimed the credit is disposed of or ceases to be the taxpayer's principal residence within the recapture period. [4] Through section 36(f), Congress created a retrospective analysis similar to section 121 that protects against taxpayers who qualify for the FTHBC but fail to maintain the home as a principal residence pursuant to section 36. This safety net provision ensures that the fisc is protected where a taxpayer fails to satisfy the statutory requirements throughout the recapture period.

Respondent argues that because petitioner never occupied the Rice house it is not his "principal residence" and he is not entitled to the FTHBC. Petitioner argues that he is entitled to the FTHBC because he intended to occupy the Rice house as his principal residence as soon as renovations were completed. He further argues that he intended to use the FTHBC to pay for the renovations and that he was forced to

---

[4] Sec. 36(f)(7) defines the term "recapture period" as the 15 taxable years beginning with the second taxable year following the taxable year in which the purchase of the principal residence for which the FTHBC was allowed was made.

suspend work on the Rice house when he learned that the FTHBC had been disallowed. Petitioner therefore argues that he was not given the opportunity to establish the Rice house as his principal residence.

We agree with petitioner. Section 36 requires a prospective analysis of whether petitioner purchased the Rice house to occupy it as his principal residence.[5] Petitioner purchased the Rice house because it was close to his work. He intends to occupy the home as his principal residence when renovations are completed. We may accept a taxpayer's unverified testimony where we find it to be credible and persuasive. *Teymourian v. Commissioner*, T.C. Memo. 2005–232. We find petitioner to be honest and his testimony to be both credible and persuasive. There is no evidence that petitioner intended to use the Rice house for any purpose other than as his principal residence. Therefore, we hold that petitioner is entitled to the FTHBC of $7,500 for 2008 pursuant to section 36.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for petitioner*.

---

[5] The prospective analysis adopted for a taxpayer that "purchases" and "renovates" a home is different from the approach mandated in the case of a taxpayer that "constructs" a new home. Sec. 36(c)(3)(B) provides that a "residence which is constructed by the taxpayer shall be treated as purchased by the taxpayer on the date the taxpayer first occupies such residence." Sec. 36(c)(3)(B) requires that the taxpayer occupy a newly constructed home before qualifying for the FTHBC. We anticipate that the distinction between a taxpayer who "purchases" and "renovates" a home and a taxpayer who "constructs" a new home may give rise to future questions. It is not this Court's job to anticipate and decide cases that are not yet before it. *Gates v. Commissioner*, 135 T.C. 1, 17 (2010).