P.K. SPRINGFIELD, INC., Appellee,

v.

HOGAN et al.; Miles Homes, Inc., Appellant.

[Cite as *P.K. Springfield, Inc. v. Hogan* (1993), 86 Ohio App.3d 764.]

Court of Appeals of Ohio,
Clark County.

No. 2920.

Decided March 19, 1993.

*Elbert G. Smith,* for appellee.

*Joseph N. Monnin,* for appellant.

---

WOLFF, Judge.

Miles Homes, Inc. appeals from a judgment of the Clark County Court of Common Pleas which nullified a summary judgment granted in the corporation's favor and excluded it from the distribution of the proceeds of a foreclosure sale on the basis that it was not a licensed Ohio corporation.

The facts are essentially as follows.

In January 1989, P.K. Springfield, Inc. ("PK") filed a complaint seeking foreclosure of its lien on real estate owned by Thomas J. and Mindy Hogan. The complaint further sought a marshalling of all liens on the property and named as defendants Miles Homes, Inc. and other persons holding such liens. On June 20, 1989, Miles Homes filed an amended answer and cross-claim, asserting that it held the first and best lien on the property at issue and requesting that the mortgage be foreclosed, the property be sold, and the proceeds distributed to the lienholders in order of their priority.

On July 10, 1989, PK filed its answer to the cross-claim asserting, *inter alia,* that Miles Homes was not a corporation licensed to do business in the state of Ohio and that, as a result, PK had the first and best lien on the property.

On December 12, 1989, Miles Homes filed a motion for summary judgment, asserting that it was entitled to foreclosure of the premises and requesting that the property be sold and the proceeds be distributed to satisfy its mortgage. No motion in opposition to this motion for summary judgment was filed by PK or any of the other parties to the action, and on January 3, 1990 the trial court granted summary judgment in favor of Miles Homes.

On February 27, 1990, the trial court vacated this summary judgment due to Miles Homes' failure to serve process on the homeowners. After service was completed, Miles Homes refiled its motion for summary judgment, and again no motion in opposition was filed by any of the parties to the action. On December 26, 1990, the trial court again granted summary judgment in favor of Miles Homes and ordered that the property be sold.

On May 8, 1991, Miles Homes moved to join as additional parties all other lienholders, not yet parties to the action, so that they could set forth their claims and have their interests in the property determined by the court. This motion was granted, but only one of these lienholders, Steel Products Employee Credit Union ("Credit Union"), filed an answer.

On December 9, 1991, PK filed a motion seeking distribution of the sale proceeds on the basis that Miles Homes had not acquired a license to transact business in Ohio until November 21, 1989 and therefore could neither utilize the state courts to pursue its cross-claim nor receive any distribution from the court-ordered sale of the property. Ten days later, Credit Union also filed a motion for distribution premised on the fact that Miles Homes was not a licensed corporation.

On January 23, 1992, a hearing was held to determine the question of distribution. On February 10, 1992, the trial court filed its decision and entry holding its prior proceedings, including the granting of summary judgment in favor of Miles Homes, to be nullities and excluding Miles Homes from the distribution of proceeds.

Miles Homes appeals from this judgment and asserts six assignments of error. Due to their substantial similarity and in the interest of judicial economy, we will consider these assignments of error together. (PK did not favor us with an appellate brief.)

COMBINED ASSIGNMENTS OF ERROR

"I. In the February 6, 1992 judgment entry of distribution the court made a ruling not supported by law or equity.

"II.  The February 6, 1992 judgment entry of distribution is in error in finding the sale proceedings of appellant are a nullity.

"III.  The February 6, 1992 judgment entry of distribution is in error in finding that the plaintiff, P.K. (PK, Inc.) has the first and best lien superior to the mortgage of the appellant.

"IV.  The February 6, 1992 judgment entry of distribution is in error in authorizing payment to a junior lienholder without payment to the mortgagee that is first in time and first in right.

"V.  The February 6, 1992 judgment entry of distribution is in error wherein it nullifies the foreclosure sale, but orders distribution of the sale proceeds.

"VI.  The February 6, 1992 judgment entry of distribution in [sic] error for nullifying the foreclosure sale and not setting aside the deed from the Clark County Sheriff to the highest bidder at the foreclosure sale."

■  R.C. 1703.03 mandates that all corporations not incorporated under the laws of Ohio must hold an uncancelled and unexpired license to transact business in the state.  R.C. 1703.29(A) further provides the ramifications of conducting business in Ohio without the benefit of such a license, and states in pertinent part:

"The failure of any corporation to obtain a license * * * does not affect the validity of any contract with such corporation, *but no foreign corporation which should have obtained such license shall maintain any action in any court until it has obtained such license.*  Before any such corporation shall maintain such action on any cause of action arising at the time when it was not licensed to transact business in this state, it shall pay to the secretary of state a forfeiture of two hundred fifty dollars and file in this office the papers required.  * * *" (Emphasis added.)

■  Thus, while R.C. 1703.29(A) preserves the validity of contracts entered into by an unlicensed foreign corporation, it nonetheless discourages unlicensed corporations from doing business in Ohio by prohibiting such a corporation from maintaining any action in any court until the corporation obtains a license.  In addition to the potential time delay associated with this prohibition, R.C. 1703.29 further penalizes unlicensed corporations by imposing various forfeitures not required by the normal application process.  R.C. 1703.29(A) does not permanently deny an unlicensed corporation access to Ohio courts; it merely establishes the penalties and procedures required for such corporations to acquire such access.

In these assignments of error, Miles Homes argues that the trial court erred in that (1) the corporation was not required by R.C. 1703.29(A) to acquire a license prior to filing a cross-claim, and (2) even were the corporation required to obtain

such a license, the trial court was not authorized under R.C. 1703.29(A) to nullify its prior proceedings or to exclude the corporation from the foreclosure sale proceeds. We will consider each of these arguments in turn.

In support of its contention that R.C. 1703.29(A) did not require that the corporation obtain a license prior to filing its cross-claim, Miles Homes argues that it did not institute the lawsuit and the trial court's determination that a license was required in this case would prevent the corporation from "maintain[ing] a defense and assert[ing] its legal rights." As to Miles Homes' "maintaining its defense," we disagree.

■ R.C. 1703.29(A) does not prevent an unlicensed corporation from defending a suit brought against it in Ohio. *Colegrove v. Handler* (1986), 34 Ohio App.3d 142, 517 N.E.2d 979. Therefore, Miles Homes could not be prevented from taking those actions necessary for its defense, *i.e.*, filing its answer, motion to file an amended answer, and amended answer. Despite Miles Homes' inferences to the contrary, the trial court did not determine that a license was required for Miles Homes to perform these typical defense actions. Rather, the trial court determined that Miles Homes was required to obtain a license because the corporation asserted a cross-claim. Thus, the question before this court is whether the filing of a cross-claim by an unlicensed foreign corporation triggers the license requirements of R.C. 1703.29(A).

■ As we stated *supra*, R.C. 1703.29(A) prohibits an unlicensed corporation from "maintaining an action" until it acquires a license. Thus, Miles Homes was required to obtain a license if its cross-claim constituted "maintaining an action."

R.C. 2307.01 defines "action" as "an ordinary proceeding in a court of justice * * * by which a party prosecutes another for the redress of a legal wrong, enforcement of a legal right, or the punishment of a public offense." This definition is quite broad, and there is no doubt that cross-claims in general, and Miles Homes' cross-claim in particular, fall within its purview.

Accordingly, we conclude that the trial court correctly determined that R.C. 1703.29(A) required Miles Homes to obtain a license in order to maintain its cross-claim. This portion of the combined assignments of error is overruled.

We now turn to Miles Homes' second contention that even if the trial court was correct in its determination that a license was required to file a cross-claim, it was nevertheless incorrect in its determination that Miles Homes's unlicensed status warranted nullification of the trial court's prior rulings and exclusion of the corporation from the distribution of foreclosure sale proceeds. Specifically, Miles Homes argues that (1) no action was warranted because the license requirement issue had been waived; (2) no action was warranted because the corporation complied with R.C. 1703.29(A) by obtaining a license prior to its motion for

summary judgment; and (3) even if the trial court could permissibly take action on this issue, nullification and exclusion were impermissible under R.C. 1703.-29(A) because these actions indirectly invalidated its mortgage contract in direct contravention to the statute's statement that such invalidation is forbidden.

In support of its contention that the license requirement was waived, Miles Homes relies on the fact that none of the parties to the action raised the issue of its failure to obtain an Ohio license until after the trial court rendered summary judgment in its favor, ordered the sale of the property, and was in the process of determining the distribution of the foreclosure proceeds.

■■■ In general, the failure of a corporation to have an Ohio license is a defense to any action maintained by that corporation. Therefore, adverse parties may move to dismiss the action, or, in the absence of such a motion, the trial court may dismiss the action on its own motion. However, this defense may be waived if not raised at the appropriate time. See *Allstate Financial Corp. v. Westfield Serv. Mgt. Co.* (1989), 62 Ohio App.3d 657, 577 N.E.2d 383; *State ex rel. Bri–Den Co., Inc. v. Union Scioto Schools Bd. of Edn.* (Mar. 7, 1990), Ross App. No. 1543, unreported, 1990 WL 34363

■■■ In this case, none of the parties filed a motion to dismiss the cross-claim on the basis of Miles Homes' failure to obtain a license. Moreover, none of the parties opposed Miles Homes' motion for summary judgment on this, or any other, basis. Indeed, the only mention of Miles Homes' failure to obtain a license is contained in PK's answer to the cross-claim. However, the mere assertion of a defense in an answer is insufficient to preserve the defense on a motion for summary judgment because the nonmoving party to such motions "may not rest upon the mere allegations or denials of his pleadings, but his response * * * must set forth specific facts showing that there is a genuine issue for trial." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. See, also, *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. In its motion for summary judgment, Miles Homes affirmatively stated, and provided supporting affidavit testimony, that it was a licensed Ohio corporation. None of the parties adverse to the motion for summary judgment chose to challenge this statement, or indeed to oppose the motion at all, and thus those parties waived the defense. We note that Credit Union was not a party to the action until after the motion for summary judgment was granted, and thus did not waive the defense regarding Miles Homes' unlicensed status.

In support of its contention that the trial court's action was impermissible because the corporation was in compliance with R.C. 1703.29(A) since it had obtained the required license prior to its motion for summary judgment, Miles Homes relies on *Moore v. Ochiltree* (1968), 16 Ohio Misc. 45, 45 O.O.2d 38, 239

N.E.2d 242. In *Moore,* the Common Pleas Court of Montgomery County held that a corporation's failure to procure an Ohio license is a technical defense only and that a corporation can comply with the statutory requirements by obtaining the necessary license at any time prior to judgment.

As stated previously, R.C. 1703.29(A) specifically provides that an unlicensed corporation may not *maintain an action* until it acquires an Ohio license. The phrase "maintain an action" may mean either the commencement of an action or the continuation of an action already begun. Black's Law Dictionary (5 Ed.Rev.1979) 859. Thus, the beginning or continuation of an action by an unlicensed corporation clearly violates R.C. 1703.29(A). Furthermore, the statute does not expressly provide an exception in cases where the corporation acquires a license prior to judgment, or indeed at any other time after it commences the action. Thus, the failure of a corporation to procure the required license prior to maintaining an action violates R.C. 1703.29(A) and may be a sufficient basis for a judicial remedy for that violation, regardless of whether the corporation obtains a license prior to final judgment.

However, that is not to say that a trial court should dismiss every case in which an unlicensed corporation fails to obtain the necessary license until sometime during the course of the action. Rather, if the adverse party fails to object to the unlicensed status of the corporation until after that corporation has obtained the necessary license, the defense of a failure to obtain the necessary license is rendered moot.

Such was the case here. None of the parties to the action sought the appropriate remedy for a violation of R.C. 1703.29(A), *i.e.,* dismissal, or opposed the motion for summary judgment on that basis, prior to Miles Homes' obtaining a license. Once Miles Homes obtained the necessary license, the continuation of the action no longer violated R.C. 1703.29(A) and its prior unlicensed status was no longer a basis for a judicial remedy and could not be asserted as a defense by any of the parties to the action, even by motion of Credit Union, which we previously determined did not waive the defense, in that Credit Union was not joined until after Miles Homes obtained the necessary license.

Accordingly, we conclude that the unlicensed status of Miles Homes did not warrant any action by the trial court because the defense was waived by the original parties to the action and rendered moot by the time additional parties were joined in the action.

We now turn to Miles Homes' contention that even if its failure to procure the necessary Ohio license was a violation of R.C. 1703.29(A) which warranted action by the trial court, the violation did not warrant nullification of all prior proceed-

ings and exclusion of the corporation from the distribution of the foreclosure proceeds.

As stated *supra*, R.C. 1703.29(A) expressly preserves the validity of contracts entered into by unlicensed corporations. These contracts may be enforced in Ohio courts, but only after the corporation obtains the necessary license by paying the "penalties" of time delay and increased forfeiture fees required for having failed to procure the license prior to doing business in Ohio.

By nullifying its prior proceedings and excluding Miles Homes from the proceeds of the foreclosure sale, the trial court determined that Miles Homes was not the first and best lienholder on the property and distributed the proceeds to otherwise junior lienholders. In so doing, the trial court rendered Miles Homes' mortgage unenforceable and indirectly invalidated its mortgage contract. Such action is not permissible under R.C. 1703.29(A).

Accordingly, this portion of the combined assignments of error is sustained.

The February 10, 1992 judgment appealed from will be reversed, and the matter will be remanded for distribution of the foreclosure sale proceeds pursuant to the summary judgment entered February 8, 1991, and any further proceedings consistent with this opinion which may be necessary to protect individuals or entities with interests in this litigation.

*Judgment reversed*
*and cause remanded.*

BROGAN and FREDERICK N. YOUNG, JJ., concur.