**TIGER, INC., Plaintiff,**

v.

**TIME WARNER ENTERTAINMENT COMPANY, L.P., et al., Defendants.**

No. 5:98–CV–713.

United States District Court, N.D. Ohio, Eastern Division.

Nov. 13, 1998.

---

**15.** *See supra* note 14.

Rajko Radonjich, Howard E. Mentzer, John W. Mygrant, Mentzer, Vuillemin & Mygrant, Akron, OH, Marlene N. Lally, Cleveland, OH, for Tiger, Inc.

Nickolas P. Andreeff, Richard T. Cunningham, E. Marie Wheeler, Amer, Cunningham, Brennan, Akron, OH, for Time Warner Entertainment Co., L.P. and Warner–CCC, Inc.

## MEMORANDUM OPINION

GWIN, District Judge.

In this breach of contract case, Plaintiff Tiger, Inc. sues Defendants Time Warner Entertainment Company, L.P. ("Time Warner LP") and Warner–CCC, Inc. ("Warner–CCC"). In its complaint, Plaintiff Tiger seeks damages claimed to have resulted from defendants breach of Plaintiff Tiger's right of first refusal with regard to certain real property. Plaintiff Tiger says Defendant War-

ner–CCC conveyed certain real estate to Defendant Time Warner LP and that Tiger had a right to first refusal as to this property. Now before the Court are the parties' cross motions for summary judgment filed October 13, 1998 [Docs. 29, 30].[1]

In its motion for partial summary judgment, Plaintiff Tiger first seeks judgment finding Defendant Warner–CCC breached Tiger's right of first refusal contained in a 1977 warranty deed.[2] Second, Plaintiff Tiger seeks judgment as to liability only against Defendant Time Warner LP for intentional interference with Plaintiff Tiger's contract with Defendant Warner–CCC. Third, plaintiff asks for judgment dismissing Defendants Warner–CCC's and Time Warner LP's counterclaims against Plaintiff Tiger for declaratory judgment, frivolous suit and abuse of process.

In the defendants' motion for summary judgment, Warner–CCC and Time Warner LP seek judgment on both counts of Plaintiff Tiger's complaint. The defendants also seek a declaratory judgment stating there has been no conveyance to trigger Plaintiff Tiger's right of first refusal.[3]

In ruling on these motions, the Court first considers whether Plaintiff Tiger gives sufficient evidence for this Court to conclude that Defendant Warner–CCC breached Tiger's contractual right of first refusal. To decide this, the Court considers whether the transfer of the property at issue is a "purchase" sufficient to trigger Tiger's preemptive rights. As part of this review, the Court decides whether Defendants Time Warner LP and Warner–CCC are related or nonrelated entities. The Court also decides whether Defendant Warner–CCC is a defunct corporation lacking the capacity to bring counterclaims against Plaintiff Tiger.

Upon review of the record, the Court finds that Defendants Time Warner LP and Warner–CCC are two non-related, distinct business entities. The Court also concludes that Defendant Warner–CCC is a defunct entity for purposes of transacting business in the State of Ohio. The Court further finds that the conveyance at issue does constitute a purchase sufficient to trigger the right of first refusal. As related, the Court finds that Plaintiff Tiger gives sufficient evidence to defeat the defendants' counterclaims for frivolous suit and abuse of process. As for Plaintiff Tiger's claims for breach of contract and intentional interference with a contract, the Court finds that material issues of facts exist making summary judgment on these claims inappropriate.

For the reasons herein, the Court therefore grants that part of Plaintiff Tiger's motion for partial summary judgment dismissing defendants' second and third counterclaims against Tiger, but denies that part of Plaintiff Tiger's motion seeking judgment on its breach of contract and intentional interference with contract claims. Because material issues of fact remain on these claims, the Court also denies Defendants' motion for summary judgment on its first counterclaim requesting declaratory relief.

## I. Facts

In its complaint, Plaintiff Tiger alleges that Defendant Warner–CCC, as grantor, breached its agreement with Tiger, as grantee, regarding certain real estate known as 1200–1210 Brownstone Avenue, Akron, Ohio (Lot B).[4] The facts of this case are complex.

On May 13, 1966, Akron Telerama, Inc., (with its successors in interest, n/k/a Defendant Warner–CCC), took title to two contiguous parcels of land. One 10–acre parcel con-

---

1. On December 5, 1997, Plaintiff Tiger filed a two-count complaint in the Cuyahoga County Court of Common Pleas. On March 26, 1998, Plaintiff Tiger removed this case to federal court pursuant to 28 U.S.C. §§ 1441, 1446 [Doc. 1]. On October 14, 1998, the parties filed Stipulations of Fact for purposes of summary judgment [Doc. 31].

2. See Joint Exhibit 2, 1977 Warrant Deed (Summit County Rec., Vol. 5978, at 354–356).

3. The defendants' motion for summary judgment does not speak to their second and third counterclaims for frivolous suit and abuse of process.

4. The warranty deed containing the right of first refusal is recorded at Summit County Rec., Vol. 5978, at 354–356.

tained the undivided lots designated as Lots A and B (Summit County Rec., Vol. 4555, at 304–305). The other parcel contained a .18 acre lot, located north of the first parcel, designated as Lot C (Summit County Rec., Vol. 123, at 37695).

Near July 26, 1977, Defendant Warner–CCC severed and transferred by deed 2.1411 acres (Lot A) of the original 10 acres to Plaintiff Tiger (Summit County Rec., Vol. 5978, at 354–356). As part of this transfer, Defendant Warner–CCC granted Plaintiff Tiger a right of first refusal to the remaining 7.8238 acres (Lot B). The right of first refusal says, in pertinent part:

In the event Grantor receives an offer to purchase Parcel "B" consisting of 7.8238 acres, as shown on the survey map attached hereto, which it deems to accept, Grantor shall offer said Parcel "B" or any portion of Parcel "B" subject to said offer to purchase, to Grantee or Grantee's shareholders, upon the same terms and conditions contained in said offer to purchase. In the event Grantee does not accept said offer to purchase in writing within thirty (30) days from the date of presentment, then Grantee shall be deemed to have refused to accept said offer to purchase and Grantor shall be free to sell said property to the new purchaser upon the conditions and terms stated in said agreement to purchase.

\* \* \* \* \* \*

TO HAVE AND TO HOLD the above granted and bargained premises, with the appurtenances thereunto belonging, unto the said grantee, its heirs and assigns forever. And WARNER–CCC, INC., the said Grantor, does for itself, and its successors and assigns, covenant with the said grantee, its heirs and assigns . . .

Lot B remains titled in the name of Akron Telerama, Inc. (n/k/a Warner–CCC), but is encumbered by Plaintiff Tiger's right of first

refusal. This is in contrast to Lot C that was not encumbered and was conveyed to Defendant Time Warner LP near February 19, 1993. Defendants maintain that Lot B, legally, has never been conveyed or titled to Defendant Time Warner LP. However, the parties agree that Warner–CCC assigned Lot B's beneficial interest to Time Warner LP on or about October 29, 1991. This assignment gave Time Warner LP all "economic benefits" generated by Lot B, including certain income rights and cash benefits.[5]

Plaintiff Tiger now sues the defendants arguing that Defendant Warner–CCC's alleged conveyance of Lot B occurred without notice to Plaintiff Tiger and in breach Tiger's right of first refusal. In making these claims, Tiger says that Defendant Time Warner LP is a "new purchaser" from Defendant Warner–CCC and that Time Warner LP became the "equitable owner" of the property. In response, the defendants say that Defendant Time Warner LP is not a new purchaser, but is a "related party" not affected by the provisions of the right of first refusal.[6]

Considering these facts, the Court decides whether there is sufficient evidence to support either parties' motion for summary judgment.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, courts shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon

---

**5.** Specifically, Defendant Time Warner LP receives any tax benefits that may result from the property's depreciation. As related, Time Warner LP pays the property taxes associated with the property. Defendant Time Warner LP also alone occupies the property and has no lease. Further, Time Warner LP pays no rent for its occupancy of the property, since it receives back any and all cash benefits associated with the property. See Stipulation of Facts, ¶¶ 18–24.

**6.** See Ohio Rev.Code § 319.54(F) (Compensation for Services; Payments To Real Estate Assessment Fund).

the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 256 (6th Cir.1998).

Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505.

### III. Discussion

### A. Breach of Contract

Plaintiff Tiger first seeks summary judgment finding Defendant Warner–CCC liable for breach of Tiger's contractual rights of first refusal. Plaintiff Tiger says this occurred when Defendant Warner–CCC transferred certain rights in Lot B to Defendant Time Warner LP. In its motion, Tiger contends that Defendant Warner–CCC is liable for breach of contract because it failed to give Tiger notice of the property transfer or to give Tiger the opportunity to exercise its right of first refusal.

Plaintiff Tiger argues that, despite the lack of a recorded transfer of title in the county records, the conveyance of Lot B constituted a "purchase" of realty sufficient to trigger the contract. In this regard, Tiger says the defendants "have consummated a purchase of the subject realty by every measure other than the recorded deed."[7] Plaintiff Tiger also claims that the defendants purposefully withheld filing a deed and artificially maintained the property in Akron Telerama, Inc.'s name (Warner–CCC) in an effort to circumvent Tiger's preemptive rights.

In deciding whether Plaintiff Tiger gives sufficient evidence of Defendant Warner–CCC liability for breach of contract, the Court first reviews the terms of the contract to see if there is evidence of an express breach of contract. If there is not, the Court then considers other evidence that may show a breach. Specifically, the Court decides (1) whether Plaintiff Tiger gives sufficient evidence that Defendant Time Warner LP made an offer to purchase the property, and (2) whether Plaintiff Tiger gives sufficient evidence to warrant construing the conveyance of Lot B to be "purchase" as that term is used in the right of first refusal clause of the deed.

Under Ohio law, "contract terms are to be given their plain, ordinary meaning unless: (1) expert testimony provides a different meaning, particular to the industry involved; (2) some other meaning is clearly evident from the face or overall content of the instrument; or (3) manifest absurdity would result." *Construction Interior Sys., Inc. v. Marriott Family Restaurants, Inc.*, 984 F.2d 749, 755 (6th Cir.), *cert denied*, 510 U.S. 869, 114 S.Ct. 194, 126 L.Ed.2d 152 (1993). Further, "[t]he agreement of the parties to a written contract is to be ascertained from the language of the instrument, and there can be no intendment or implication inconsistent with the express terms thereof." *Latina v. Woodpath Dev. Co.*, 57 Ohio St.3d 212, 214, 567 N.E.2d 262 (1991) (citation omitted).

As a general rule, interpretation of a written contract is a matter of law for initial determination by the court. Only when the "relevant contract language is ambiguous" is the job of interpretation turned over to a fact finder. *Astor*, 7 F.3d at 539–40. *See also Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir.1991); *Brantley Venture Partners, II, L.P. v. Dauphin Dep. Bank and Trust Co.*, 7 F.Supp.2d 936, 940 (N.D.Ohio 1998).

In the instant case, the contractual clause at issue is the specific language granting Plaintiff Tiger a right of first refusal for the purchase of Lot B. The deed states that "[i]n

---

**7.** Plaintiff's Brief In Support of Partial Summary    Judgment at 11.

the event Grantor receives an offer to purchase Parcel "B" [the subject property], ... which it deems to accept, Grantor shall offer said parcel "B" or any portion of Parcel "B" subject to said offer to purchase, to Grantee or Grantee's shareholders, upon the same terms and conditions contained in said offer to purchase." [8] A "right of first refusal" has been defined under Ohio law as "a promise to present offers to buy property made by third parties to the promisee in order to afford the promisee the opportunity to match the offer." *Latina v. Woodpath Dev. Co.*, 57 Ohio St.3d 212, 567 N.E.2d 262 (1991). Like other contracts, rights of first refusal are to be "given their ordinary meaning". *Id.* at 214, 567 N.E.2d 262.

Applying the rules of contract interpretation outlined above, this Court finds that the contractual right of first refusal contained in the warranty deed requires Defendant Warner–CCC, upon receiving an offer to purchase all or any part of Lot B, to first give Plaintiff Tiger, an opportunity to review the offer. The right of first refusal then gives Plaintiff Tiger 30 days to either reject or accept the offer upon the same terms and conditions.

■ Defendants do not dispute the existence and operative effect of Tiger's right of first refusal. Defendants however claim that only a conveyance of legal record title implicates the right of first refusal. Defendant Time Warner LP says the right of first refusal as to Lot B did not arise because record title of Lot B remains in the name of Akron Telerama, Inc. (Warner–CCC). Defendants further contend that because Defendant Time Warner LP only receives the "economic benefits" from parcel B, the conveyance at issue took place in the context of a "general assets transfer for purposes of obtaining a partnership interest." [9]

To support their position, the defendants rely upon the terms of the partnership agreement setting up Defendant Time Warner LP. That partnership agreement transferred all assets of the partners to Defendant Time Warner LP, the new partnership, in exchange for an interest as a general partner. Defendants say, however, that the partnership agreement transferred only unencumbered assets. Because Lot B was encumbered by Plaintiff Tiger's interest, Defendant Warner–CCC says it was not transferred.

After reviewing the contract, the Court disagrees with the defendants' position. First, the Court finds that *any* offer to "purchase" all or any part of Lot B will trigger the clause. Further, no where does the clause say that a "sale" of the subject property is required to trigger the plaintiff's preemptive rights, as defendants contend.[10] Rather, the clause speaks only of offers to purchase. The defendants' fail to give evidence to the contrary.

The Court now decides whether the agreement with Defendant Time Warner LP is a "purchase" for purposes of triggering the right of first refusal. To help decide this, the Court examines whether Defendant Time Warner LP is a new purchaser for purposes of resolving this dispute.

First, the Court is persuaded by Plaintiff Tiger's argument that the conveyance at issue is a "purchase" sufficient to trigger Plaintiff Tiger's preemptive rights. It is clear from the contract's terms that the right of first refusal is triggered if Defendant Warner–CCC receives an offer to purchase the subject property.

Black's Law Dictionary (6th ed.1990) at 1234–35 defines a "purchase" as a "[t]ransmission of property from one person to another by voluntary act and agreement, founded on a valuable consideration. ... In a technical and broader meaning relative to land, generally means the acquisition of real estate by any means whatever except by descent." *Id.* (citations omitted). It also defines a "purchaser" as "a person who, for adequate and full consideration in money or money's worth, acquires an interest ... in

---

**8.** See warranty deed, Joint Exhibit 2.

**9.** Defendant's Brief in Support of Summary Judgment at 13.

**10.** See Defendants' Opposition to Partial Summary Judgment at 8, stating "[t]his is a straight forward right of first refusal wherein the right of refusal is predicated upon an actual offer to purchase and sale of the real estate."

property that is valid under state law...."
*Id.* at 1235.

Applying these definitions to the instant case, Defendant Time Warner is a "purchaser." Defendant Time Warner, in consideration for receiving the economic benefits of Lot B, acquired the assets of Defendant Warner–CCC in exchange for "a partnership interest in the new operating entity."[11]

Although relevant case law fails to provide as clean a definition of "purchase" or "purchaser" as Black's Law Dictionary, Ohio case law and Sixth Circuit opinions interpreting Ohio case law have recognized that ownership of real property can be acquired irrespective of the actual transfer and recording of title. Although these cases principally concern internal revenue regulations and statutes in the context of real property tax disputes, this Court finds them instructive in deciding the case at hand.

The Court is particularly persuaded by the language of the court in *Dettmers v. Commissioner of Internal Revenue*, 430 F.2d 1019 (6th Cir.1970), describing what constitutes sufficient acquisition for purposes of § 1033(a)(3) of Tax Code. In *Dettmers,* the court stated that "ownership of real property is acquired either upon delivery of the deed or upon transfer of the benefits and burdens of ownership, whichever occurs first." *Id.* at 1023 (citations omitted).

Other decisions also suggest that the conveyance at issue in our case should be construed as a "purchase" or "change in ownership" sufficient to trigger Plaintiff Tiger's contractual rights. For instance, in *Commissioner v. Baertschi,* 412 F.2d 494 (6th Cir. 1969), the Sixth Circuit discusses what has become known as the "practical test." This test is frequently applied in this Circuit when determining ownership of real estate for tax purposes. The court said:

> We believe that this circuit has adopted a very practical rule in relation to consummation of a sale for tax purposes:
>
> "There are no hard and fast rules of thumb that can be used in determining, for taxation purposes, when a sale was consummated, and no single factor is controlling;

the transaction must be viewed as a whole and in light of realism and practicality. Passage of title is perhaps the most conclusive circumstance.... Transfer of possession is also significant.... A factor often considered is whether there has been such substantial performance of conditions precedent as imposes upon the purchaser an unconditional duty to pay...."

*Id.* at 498 (internal citations omitted).

In *Case v. United States,* 633 F.2d 1240 (6th Cir.1980), the Sixth Circuit further describes the "practical test." The court states:

> In the alternative, the taxpayers advance the 'practical' test announced by this court in *Commissioner v. Baertschi,* 412 F.2d 494 (6th Cir.1969); and *Dettmers v. Commissioner,* 430 F.2d 1019 (6th Cir.1970). In those cases, we held that 'ownership of real property is acquired either upon delivery ... of the deed or upon transfer of the benefits and burdens of ownership, whichever occurs first.' *Dettmers, supra.,* 1023.

*Case,* 633 F.2d at 1247.

Ohio case law also suggests that a transfer in ownership of realty can occur absent a conveyance of legal title. In *Blue Ash Bldg. & Loan Co. v. Hahn,* 20 Ohio App.3d 21, 484 N.E.2d 186 (1st Dist.1984), the Hamilton County Court of Appeals decided whether the execution of a land installment contract triggered an acceleration of payment clause. The *Blue Ash* Court stated that "[t]he passage of title is not the only means to bring about change in ownership." *Id.* at 23–24, 484 N.E.2d 186. Finding that the acceleration of payment clause was triggered, the court suggests that "equitable ownership" of property, as determined by who holds the real and beneficial use of the property, is enough to change ownership. *Id.* at 24–25, 484 N.E.2d 186.

Other Ohio courts have suggested similar results. *See Cayten v. Cayten,* 103 Ohio App.3d 354, 659 N.E.2d 805 (11th Dist.1995) (finding purchase-money trust placed ownership of property with religious group despite property being titled in names of divorcing

---

**11.** See Stipulation of Facts at ¶¶ 12–13.

husband and wife); *Leathem v. Leathem,* 94 Ohio App.3d 470, 640 N.E.2d 1210 (3rd Dist. 1994) (voiding record title where spouse attempted to exclude property from marital estate by putting it in third party's name); *First Fed. Sav. & Loan v. Perry's Landing, Inc.,* 11 Ohio App.3d 135, 463 N.E.2d 636 (6th Dist.1983) (finding the execution of a land contract constituted a "change in the ownership" of mortgaged property).

Relevant to this review of whether a "purchase" has occurred is the determination of whether a new owner obtained real and beneficial ownership of the property. Plaintiff Tiger gives convincing evidence that the defendants are not related enterprises. Specifically, Plaintiff Tiger references two documents: (1) a 1996 corporate description of Defendant Time Warner LP, and (2) the partnership's Form 10–K as filed with the United States Securities and Exchange Commission on April 8, 1993.

The first document, the Standard & Poor's "Corporate Descriptions," describes Defendant Time Warner LP as a limited partnership arranged for the purpose of, among other things, producing, financing, and distributing "motion pictures, television series and animated programming." [12] That document further describes the partnership's holdings, capital expenditure, general partners, and the date of organization being February of 1992. [13] The second document, Defendant Time Warner LP's Form 10–K, similarly describes Time Warner LP's partnership structure and activities. The Form 10–K extensively outlines the partnership's business purpose and interests. Of particu-

lar interest is the subsection detailing Defendant Time Warner LP's "Cable Division." [14] Here, the Form 10–K details Time Warner LP's cable television operations throughout the country, including participation in certain programming franchises.

■ Plaintiff Tiger also gives evidence showing that Defendant Warner–CCC, when it existed, did so not as a partnership, but as a corporation organized under the laws of the State of Illinois. Plaintiff Tiger also gives other evidence showing that Defendant Warner–CCC has never filed domestic or foreign articles of incorporation in the State of Ohio. [15] This evidence supports Tiger's contention that Defendant Warner–CCC is an unregistered and defunct corporation that lacks the capacity to bring counterclaims against Tiger. See Ohio Revised Code § 1703.29. [16]

■ In general, "the failure of a corporation to have an Ohio license is a defense to any action maintained by that corporation." *P.K. Springfield, Inc. v. Hogan, et al.,* 86 Ohio App.3d 764, 769, 621 N.E.2d 1253 (2nd Dist.1993). If appropriate, "an adverse party may move to dismiss the action, or in the absence of such a motion, the Court may dismiss the action on its own motion." *Id.* Here, Plaintiff Tiger appropriately raises this defense as against Defendant Warner–CCC.

■ Although Plaintiff Tiger sufficiently shows that the defendants are non-related business entities and that the conveyance at issue should be construed as a purchase that

---

**12.** See page 2, Standard & Poor's "Standard Corporate Description."

**13.** The Standard & Poor's "Standard Corporate Description" states that Time Warner LP "acquired substantially all the filmed entertainment, cable television and cable programming business and certain other businesses from certain wholly owned subsidiaries of Time Warner Inc (TW Partners) in exchange for a General Partnership Interest in the Partnership." The description further details the collective financial contributions of certain business enterprises including ITOCHU Corp., Toshiba Corp., and U.S.West, Inc.

**14.** See pages I–9 through I–16, Securities and Exchange Commission Form 10–K.

**15.** Joint Exhibit 4, certificate from the Secretary of the State of Ohio.

**16.** Ohio Rev.Code § 1703.29 requires that all corporations not incorporated under the laws of Ohio to have a valid license to transact business in Ohio. Section 1703.29(A) also prevents unlicensed corporations from bringing actions within the state. The provisions states:

The failure of any corporation to obtain a license ... does not affect the validity of any contract with such corporation, but no foreign corporation which should have obtained a license shall maintain any action in any court until it has obtained such license.

Ohio Rev.Code § 1703.03(A).

triggers Tiger's right of first refusal, the Court finds that material issues of fact exist to warrant a jury's consideration of Defendant Warner–CCC's liability for breach of contract. For example, the parties dispute whether Plaintiff Tiger was given notice of Warner–CCC's conveyance of the subject property. The parties also dispute whether the defendants' breached Tiger's contractual rights by failing to give Tiger the opportunity to exercise its preemptive rights.

Given these disputed issues, the Court denies Plaintiff Tiger's motion for summary judgment on its claim against Defendant Warner–CCC for breach of contract under Count I of the complaint.

### B. Intentional Interference with Contract

Plaintiff Tiger next seeks judgment against Defendant Time Warner LP for intentional interference with the contract between Tiger and Defendant Warner–CCC. In making this claim, Plaintiff Tiger says that Defendant Time Warner LP was on notice of the contract between Tiger and Warner–CCC and was aware of Tiger's recorded right of first refusal to purchase Lot B of the Brownstone property. Tiger contends that, despite this knowledge, Defendant Time Warner LP violated Tiger's contractual rights when it acquired equitable ownership of the property.

■ The tort of inference with a contractual relationship was first recognized by the Ohio Supreme Court in the case of *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863 (1995). There, the Supreme Court set forth the standards of proof necessary to make such a claim. A plaintiff must prove five elements: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting damages. *Id.* at 419, 650

N.E.2d 863 (adopting the provisions of the Restatement of the Law 2d, Torts (1979)).

■ Interference with contract requires an actor to improperly interfere with the performance of a contract between two other persons. See *Miller v. Wikel Mfg. Co., Inc.*, 46 Ohio St.3d 76, 79, 545 N.E.2d 76 (1989). An essential element of the tort is interference by someone who is not a party or agent of the party to the contract or relationship at issue. *Erebia v. Chrysler Plastic Products Corp.*, 891 F.2d 1212, 1216 (6th Cir.1989); *Condon v. Body, Vickers & Daniels*, 99 Ohio App.3d 12, 22, 649 N.E.2d 1259 (8th Dist. 1994) (law firm office manager was not a "third party subject to liability for tortiously interfering with a contract to which the Firm was a party."). It is clear from the Ohio Supreme Court's decision in *Kenty* that the tort is to be used to redress the intentional interference with the performance of a contract by a third person.[17]

■ Generally, a claim for tortious interference with a business or economic relationship requires proof that "one who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another is liable to the other for the harm caused thereby." *Brahim v. Ohio College of Podiatric Medicine*, 99 Ohio App.3d 479, 489, 651 N.E.2d 30 (8th Dist.1994). Such actions must be intentional, because Ohio does not recognize negligent interference with a business relationship. See *Smith v. Ameriflora 1992, Inc.*, 96 Ohio App.3d 179, 186, 644 N.E.2d 1038 (10th Dist.1994); *Burnside v. Leimbach*, 71 Ohio App.3d 399, 404, 594 N.E.2d 60 (10th Dist.1991).

■ A person may, however, be privileged to interfere with a contractual relationship between two parties. Such a privilege arises if the third party is legitimately asserting a legally protected interest that the

---

**17.** In *Kenty*, the court defines those that are subject to liability under the tort, as follows:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the con-

tract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Kenty*, 72 Ohio St.3d at 419, 650 N.E.2d 863 (quoting § 766, Restatement of Law 2d, Torts (1979)).

person believes will be impaired by the performance of the contract. *Emergency Preemption, Inc. v. Emergency Preemption Systems, Inc.*, No. 71350, 1997 WL 473093, *5 (Ohio App. 8th Dist. Aug. 14, 1997). For example, officers, directors, and creditors of a corporation have a privilege to interfere with contracts in furtherance of their legitimate business interests. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988).

Reviewing the evidence in the instant case, this Court finds material issues of fact exist regarding the third and fourth elements of this tort—the wrongdoer's intentional procurement of the contract's breach, and lack of justification. Although the record supports Defendant Time Warner LP's knowledge of Tiger's right of first refusal,[18] material issues of fact remain regarding the extent to which Time Warner LP intentionally interfered with the Tiger/Warner–CCC contractual relationship.

Accordingly, the Court denies Plaintiff Tiger's motion for summary judgment on its claim against Defendant Time Warner LP for intentional interference and breach of contract under Count II of complaint.

### C. Defendants' Counterclaims

Plaintiff Tiger also seeks judgment on the defendants' three counterclaims. Defendants' first counterclaim seeks a declaratory judgment stating there has been no legal conveyance of Lot B and that there has been no breach of Plaintiff's first right of refusal. In seeking judgment on this counterclaim, Plaintiff Tiger argues that its complaint against the defendants is a proper vehicle to resolve this dispute. See Ohio Rev.Code § 2721.07.[19] The Court agrees.

Defendants' second and third counterclaims against Plaintiff Tiger are related. In these counterclaims, the defendants allege frivolous suit and abuse of process. In making these claims, the defendants suggest that

Plaintiff Tiger commenced this action without reasonably investigating the title records of the subject property. The defendants also say Plaintiff Tiger brought this action in an effort to harass Defendants Time Warner LP for the "improper purpose of obtaining a better offer on the sale of Lot A to Defendant TWE." [20]

To prevail on a claim of abuse of process, a plaintiff must establish the following elements: (1) that a legal proceeding has been instituted in proper form and with probable cause, (2) that the proceeding has been perverted in an attempt to accomplish an ulterior motive or purpose for which it was not designed, and (3) that damage has resulted from the wrongful use of process. *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 662 N.E.2d 1074 (1996); *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 662 N.E.2d 9 (1996); *American Process Design, Inc. v. DeBoer*, No. C–971045, 1998 WL 754322, *2 (Ohio Ct.App. 1st Dist. Oct. 30, 1998).

The Court finds insufficient evidence to support a claim for abuse of process. Specifically, the defendants fail to give sufficient evidence such that a jury could conclude that Plaintiff Tiger, through its counsel Ms. Lally, initiated this proceeding to accomplish an ulterior motive or purpose for which it was not designed, or that any damage resulted from the Plaintiff Tiger's alleged wrongful use of process.

As related, a lawsuit or claim is frivolous if the claim or suit "serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation," or where there is evidence that claim or action "is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or

---

**18.** See Stipulation of Facts, ¶¶ 14–18, where Defendant Time Warner acknowledges that the property is encumbered by Plaintiff Tiger's first right of refusal.

**19.** Ohio Rev.Code § 2721.07 states: "Courts of record may refuse to render or enter a declarato-

ry judgment or decree when such judgment or decree would not terminate the uncertainty or controversy giving rise to the proceeding." *Id.* (Baldwin 1998).

**20.** See Defendants' Answer and Counterclaim at 7–8.

cannot be supported by a good faith argument for the establishment of new law." Ohio Rev.Code § 2323.51(a)(2)(i) and (ii).

The defendants fail to show sufficient evidence to support their counterclaim for frivolous suit. As discussed in this Court's earlier opinion addressing the defendants' motion to dismiss this case for failure to state a claim [Doc. 14], Plaintiff Tiger has given sufficient evidence to bring this action against these defendants. Plaintiff Tiger has identified facts that, if proved, could cause a fact finder to reach a verdict favorable to the plaintiff.

Considering the whole of the evidence, the Court concludes that the defendants second and third counterclaims for frivolous suit and abuse of process lack merit. Furthermore, because the Court has determined that material issues of fact exist regarding the defendants' liability for breach of contract and intentional interference with contract, the defendants first counterclaim seeking a declaratory judgment should be denied. Accordingly, the Court dismisses defendants' counterclaims against Tiger.

### D. Rule Against Perpetuities

■ In their motion for summary judgment, Defendants Time Warner LP and Warner–CCC raise the defense that Plaintiff Tiger's contractual first right of refusal is *void ab initio*. In Ohio, the rule against perpetuities is codified at Ohio Rev.Code § 2131.08. This section states, in pertinent part:

(A) No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest.... It is the intention by the adoption of this section to make effective in Ohio what is generally known as the common law rule against perpetuities, except

as set forth in divisions (B) and (C) of this section.

\* \* \* \* \* \*

(C) Any interest in real or personal property that would violate the rule against perpetuities, under division (A) of this section, shall be reformed, within the limits of the rule, to approximate most closely the intention of the creator of the interest. In determining whether an interest, would violate the rule and in reforming an interest, the period of perpetuities shall be measured by actual rather than possible events.

Ohio Rev.Code § 2131.08(A) and (C).

In this case, the defendants suggest that the right of first refusal granted to Plaintiff Tiger violates the rule against perpetuities because the covenant goes to both Tiger, Inc. and its shareholders. The defendants say such a grant is not personal to Tiger, Inc. and is of unlimited duration.[21] The defendants argue that Plaintiff Tiger's corporate structure prevents the right of first refusal from ever vesting because new shareholders can always, and indefinitely, purchase stock in Tiger, Inc. The defendants suggest that such indefinite ownership causes the contractual right to fail because (1) new shareholders could purchase Tiger stock more than 21 years after the death of those shareholders alive at the time of the contract's creation in 1977, and (2) that all future shareholders of Tiger, Inc. are not identifiable.

Ohio Rev.Code § 2131.08, as amended, specifically provides that "the period of perpetuities shall be measured by *actual rather than possible events.*" Ohio Rev.Code § 2131.08(C) (emphasis added). In effect, the 1967 amendments to § 2131.08 establish a "wait and see" doctrine in Ohio when applying the rule against perpetuities. As applied, this doctrine effectively "reverse[s] the present requirement that if there is any pos-

---

**21.** *See Stratman v. Sheetz,* 60 Ohio App.3d 71, 573 N.E.2d 776 (1st Dist.1989) stating:

To determine if a preemptive right is personal to either the grantee or the grantor, the court must look exclusively to the language of the contract and focus on whether the language states that the right extends to the heirs or assigns of either party, or otherwise indicates that the parties intended the contract to be

binding beyond either of their lives. Absent such language, the preemptive right is deemed to be personal.

*Id.* at 72, 573 N.E.2d 776. Applying the analysis in *Sheetz,* the Court finds Plaintiff Tiger's preemptive right to be personal. The plain language of the covenant shows that the right of first refusal at issue was granted only to Tiger, Inc. and its shareholders.

sibility, no matter how remote, that the interest might fail at the time the interest is created, then the entire interest must fail." Commentary to Ohio Rev.Code § 2131.08 (Baldwin 1998).

This is relevant to the present action since the basis for the defendants' defense under the rule focuses on only "possible" events. Specifically, the defendants say the rule is triggered because there is a possibility that new shareholders will continue to purchase stock in Tiger, Inc. In Ohio, the mere possibility of a future event does not invoke the rule. Commentary discussing the 1967 amendments to § 2131.08 supports this conclusion:

> The second proposed change which would be Paragraph (C) of the revised statute, is designed to avoid the harsh consequences of the common law rule when applied to interests which, perhaps for a very technical reason, would now be found to have violated the rule. The impetus to reform the rule has come from many members of the bench and bar, and a growing number of states have enacted or are in the process of enacting new legislation.

> \*     \*     \*     \*     \*     \*

> Paragraph (C) would be operative in two situations. First, it would permit a court to look at the events taking place after the interest was created and which exist at the time of the litigation, and then determine whether or not the interest in fact violates the rule.

Commentary to Ohio Rev.Code § 2131.08 (Baldwin 1998).

Applying the "wait and see" doctrine to the facts of this case, it is clear that at the time Plaintiff Tiger's right of first refusal was granted in 1977, all shareholders of Tiger, Inc. were readily identifiable. These shareholders included Ray R. Nemer, who died September 28, 1995, and Agnes J. Nemer, who is still alive.[22] Because Plaintiff Tiger can identify a life in being at the time of the

creation of the interest, and because the statutory period has yet to expire, Plaintiff Tiger's right of first refusal is valid.[23]

Accordingly, the Court concludes that the defendants' rule against perpetuities defense lacks merit.

### IV.   Conclusion

For the reason stated above, the Court grants that part of Plaintiff Tiger's motion for partial summary judgment dismissing defendants' second and third counterclaims against Tiger. However, the Court denies that part of Plaintiff Tiger's motion seeking judgment on its claims for breach of contract (Count I) and intentional interference with contract (Count II). The Court also denies the defendants' motion for summary judgment on plaintiff's claims and on its counterclaim for declaratory relief.

An appropriate order shall enter.

---

22.   See Third Affidavit of Marlene N. Lally.

23.   *See also Board of Educ. of Worthington Sch. Dist. v. Homewood Corp.*, No. 96APE02–246, 1996 WL 469278, at \*3 (Ohio App. 10th Dist. Aug. 13, 1996) (finding corporation's right of

first refusal personal and not void by the rule against perpetuities); *Balo v. Balo*, No. 92–CA–18, 1993 WL 385347 (Ohio App. 5th Dist. Sept. 20, 1993) (finding option to purchase real estate valid under rule against perpetuities).